**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mickey TURNER, Defendant–Appellant,**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth Raven BELER, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony Lee SMITH, Defendant–Appellant.**

Nos. 89–30036, 89–30081 and 89–30103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 30, 1989.

Decided March 12, 1990.

708

James L. Vonasch, Michael C. Nance, Nance, Iaria & Gombiner, Allen M. Ressler, Browne & Ressler, Seattle, Wash., for defendants-appellants.

Andrew Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Mickey Turner, Kenneth Beler, and Anthony Smith, co-defendants below, appeal from their sentences for convictions, following guilty pleas, on separate drug trafficking charges. Appellants challenge, among other things, the district court's calculations of their offense levels under the sentencing guidelines and the court's treatment of certain objections to their presentence investigation reports. We affirm Turner and Smith's sentences, but remand Turner's sentence for compliance with Fed. R.Crim.P. 32(c)(3)(D). We vacate Beler's sentence and remand for resentencing.

## I. BACKGROUND

On October 6, 1988, a federal grand jury returned a ten-count indictment against Mickey Turner, Kenneth Beler, Anthony Smith, and seven others. The indictment charged the defendants with one count of conspiring to distribute cocaine, seven counts of distributing cocaine, one count of possessing cocaine with intent to distribute, and one count of knowingly using a firearm during and in relation to the charged conspiracy. Turner, Beler, Smith, and a co-defendant pleaded guilty to separate counts; the other co-defendants proceeded to trial. Trial testimony revealed that appellants, who moved to Washington state from Los Angeles, sold crack cocaine throughout the Seattle metropolitan area.

## II. DISCUSSION

### A. Standard of Review

The legality of a sentence is reviewed de novo. *United States v. Pomazi*, 851 F.2d 244, 247 (9th Cir.1988). In reviewing a sentence under the sentencing guidelines, the panel must determine, inter alia, whether the sentence (1) "was imposed as a result of an incorrect application of the sentencing guidelines," and (2) "is outside the application guideline range, and is unreasonable." 18 U.S.C. § 3742(e); *United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir.1989). A district court's findings of fact are reviewed for clear error and due deference is given to the district court's application of the guidelines to the facts. *Id.; Sanchez–Lopez*, 879 F.2d at 557.

### B. Turner

Turner pled guilty to distributing more than fifty (50) grams of cocaine base in furtherance of the conspiracy charged in count I, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (count V). On January 20, 1989, he was sentenced under the sentencing guidelines to a 151–month term of imprisonment followed by a five-year term of supervised release. Turner raises four issues on appeal.

#### 1. Good Time Credits

First, Turner contends that pre-Sentencing Reform Act good time provisions should apply to his sentence because he pled guilty after this circuit held the Sen-

tencing Reform Act of 1984 (SRA) unconstitutional in *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988). Prior to November 1, 1987, federal law provided for a system of meritorious and work-related good time credits. *See* 18 U.S.C. §§ 4162 and 4163 (1982). The SRA repealed those provisions and reduced the number of good time credits available. *See* 18 U.S.C. § 3624(b) (Cum.Supp.1988); *Gubiensio–Ortiz*, 857 F.2d at 1267. Turner's offense occurred on August 18, 1989, thus making him subject to sentencing under the SRA and its less favorable good time provisions.[1]

The Supreme Court upheld the constitutionality of the SRA on January 18, 1989. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). This circuit has applied *Mistretta* retroactively to sentences imposed after *Gubiensio–Ortiz*. *See United States v. Bazemore*, 869 F.2d 520, 521 (9th Cir.1989) (remanding cases for sentencing under the SRA); *United States v. Kane*, 876 F.2d 734, 736 (9th Cir.) (enabling government to appeal sentencing order under SRA provision), *cert. denied,* — U.S. ——, 110 S.Ct. 173, 107 L.Ed.2d 130 (1989). Thus, the fact that Turner was sentenced while the SRA was held to be unconstitutional by this circuit does not warrant the application of pre-SRA good time credits to his sentence. *See Kane*, 876 F.2d at 735 (appellant's "argument fails because it rests on the faulty premise that *Mistretta*, which overruled *Gubiensio–Ortiz*, does not apply retroactively").

### 2. Objections to Presentence Investigation Report

Second, Turner contends that the district court erred by (1) not deleting certain ob-

jected to statements in his presentence investigation report, and (2) failing to make written findings regarding those statements and to attach them to the report.

When a defendant challenges information contained in his presentence investigation report, the district court must make findings of fact concerning any disputed matter which it relies upon in sentencing. Fed.R.Crim.P. 32(c)(3)(D). "Violations of a defendant's due process rights occur when a court relies on materially false or unreliable information in sentencing." *United States v. Columbus*, 881 F.2d 785, 787 (9th Cir.1989); *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986).

Rule 32(c)(3)(D) was designed to ensure that due process is achieved at sentencing. *Messer*, 785 F.2d at 834.[2] The rule requires that a sentencing judge make a finding as to each matter controverted or make a determination that no such finding is necessary because the controverted matter will not be taken into account in sentencing. *United States v. Edwards*, 800 F.2d 878, 881 (9th Cir.1986). Strict compliance with Rule 32(c)(3)(D) is required and failure to comply will result in the case being remanded. *United States v. Sharon*, 812 F.2d 1233, 1234 (9th Cir.1987); *Edwards*, 800 F.2d at 881; *Messer*, 785 F.2d at 834; *cf. United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir.1984) (substantial compliance required).

Here, Turner objected to statements in his presentence investigation report which identified certain co-defendants as being members of the "Bloods" gang and mentioned the use of a .38 caliber pistol as charged in count ten of the indictment.

---

1. 18 U.S.C. § 3553(a)(4) and (5) provide that the Sentencing Guidelines that "are in effect on the date the defendant is sentenced" are to be applied by the sentencing court. Consequently, since Turner and his co-defendants were sentenced after the effective date of the amended Guidelines, the 1988 Guidelines and commentary control their sentencing.

2. Rule 32(c)(3)(D) provides:
   If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccu-

racy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence report thereafter made available to the Bureau of Prisons.

Turner objected to the factual accuracy of the statement identifying co-defendants as members of the "Bloods" gang on the basis that the statement was "hearsay on hearsay." Therefore, the district court was obligated to either make a finding as to the co-defendants' gang membership or state that it was not taking their membership into consideration in sentencing Turner. *See, e.g., Edwards*, 800 F.2d at 881. However, the district court failed to either make findings concerning Turner's objections or reveal its treatment of the challenged statement.

The government contends that the district court was not obligated to make findings in regard to the challenged statements because they did not refer to Turner. This contention lacks merit. In objecting to the identification of his co-defendants as "Bloods" gang members, Turner expressed a well-founded fear that knowledge of his relationship with gang members could have a bearing on his placement at an institution. *See* Fed.R.Crim.P. 32(c)(3)(D) House Judiciary Committee Notes to 1983 amendment. More importantly, Rule 32(c)(3)(D) applies where a defendant "allege[s] *any* factual inaccuracy in a presentence report," not just inaccuracies concerning the defendant. Fed.R.Crim.P. 32(c)(3)(D) (emphasis added). Accordingly, the district court's failure to follow Rule 32(c)(3)(D) by not responding to Turner's objections to statements identifying co-defendants as "Bloods" gang members requires remand for compliance with the rule. *See Messer*, 785 F.2d at 834.

■ While objecting to statements referring to the .38 caliber pistol, Turner asserted there was "no evidence that [he] had any knowledge of the existence of the pistol" or "that the pistol was used in any way in the alleged conspiracy." However, the objected to statements were not to the contrary. Indeed, a challenged portion of the presentence investigation report reads in part: "There was no information presented by investigators or informants which would indicate that this [.38 caliber] pistol was carried or displayed by any of the defendants during the various 'crack' cocaine transactions." In short, Turner's objection went to the inclusion of the statements concerning the pistol in the report, not to their factual accuracy. Thus, the district court was not required by Rule 32(c)(3)(D) to respond to this objection at sentencing.

■ In addition, the district court did not err in failing to delete the challenged portions of Turner's presentence investigation report. Neither due process nor Rule 32 requires a district court judge to be an editor as well as an arbiter of justice. Any concerns a defendant might have about prison officials relying on unfounded, detrimental information in his presentence investigation report should be met by a district court's compliance with Rule 32(c)(3)(D).

3. Application of Sentencing Guidelines

■ Turner contends that the district court improperly applied the sentencing guidelines because his base offense level was based on the total amount of cocaine involved in the drug transactions charged in his indictment rather than on the amount involved in the count on which he was convicted. Turner also contends that the district court erred because it never found he was involved in the charged drug transactions other than the one for which he was convicted. Consequently, Turner argues that his sentencing guideline range should be 108–135 months, not 151–158 months as the district court concluded.

In his filed objections to the presentence investigation report, Turner challenged basing his offense level on the aggregate amount of drugs involved in the conspiracy. However, the court ruled such an aggregation was proper under the Relevant Conduct section of the Guidelines.[3]

---

3. Determining the applicable offense level is basically a two-step process. First, the court applies the offense guideline section in Chapter Two most applicable to the offense of conviction. United States Sentencing Commission, *Guidelines Manual* § 1B1.2(a). Second, the court determines the applicable guideline range (or offense level) in accordance with the Revelant Conduct section, § 1B1.3. *Id.* at § 1B1.2(b).

The commentary to the Guidelines provides guidance for assessing the propriety of the district court's ruling. "[The Relevant Conduct section 1B1.3(a)(2)] applies to offenses of types for which convictions on multiple counts would be grouped together pursuant to § 3D1.2(d); *multiple convictions are not required.*" United States Sentencing Commission, *Guidelines Manual* at 1.18, Application Note 2 (emphasis added). The Background Notes for § 1B1.3 explain:

> [section 3D1.2(d) provides] for grouping together (i.e., treating as a single count) all counts charging offenses of a type covered by [section 1B1.3(a)(2)].... [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

*Id.* at 1.19. Accordingly, the district court correctly followed the guidelines by aggregating all the cocaine base involved in the crack distribution scheme to determine Turner's base level. *See United States v. Williams*, 880 F.2d 804, 805–806 (4th Cir. 1989) (where defendant pleaded guilty to one of five counts of cocaine distribution, court properly considered acts contained in four dismissed counts as relevant conduct); *United States v. Sailes*, 872 F.2d 735, 738 (6th Cir.1989) (where defendant pleaded guilty to one count of possession with intent to distribute less than 500 grams of cocaine, court properly considered defendant's possession of cocaine in excess of 500 grams as relevant conduct); *United States v. Ruelas–Armenta*, 684 F.Supp. 1048, 1050–1052 (C.D.Cal.1988) (where defendant pleaded guilty to one count of possessing a stolen letter, amounts of stolen checks not included in count of conviction

were properly aggregated in light of defendant's scheme to steal them).

Contrary to Turner's contention, the district court found that Turner was involved in all the transactions charged in the indictment. In refusing to permit Turner to withdraw his guilty plea at sentencing, the district court explained: "I listened to three weeks of evidence which his name probably came up as much as anybody else's, and again it is not just corroboration, he's spread all over a tape recording dealing crack cocaine." Moreover, Turner failed to object to a statement in the presentence investigation report that three quarters of a kilogram of cocaine was seized from his apartment at the time of his arrest. Thus, the district court's reliance on the presentence report in determining the amount of cocaine involved in Turner's drug distribution scheme was not clearly erroneous.

■ Moreover, Turner's 151–month term of imprisonment did not exceed the the applicable guideline range. The district court apparently adopted the presentence investigation report's determination that Turner's adjusted offense level is 34.[4] Turner has three criminal history points.[5] This would place him in criminal history category II. *See* United States Sentencing Commission, *Guidelines Manual*, § 4A1.1. An offense level of 34 coupled with a criminal history category of II leads to a guideline range of 168–210 months. *See id.* at 5.2. Thus, contrary to Turner's contention, his sentence of 151 months imprisonment falls below the applicable guideline range. However, because the government failed to contest Turner's sentence on appeal pursuant to 18 U.S.C. § 3742(b) (Supp. V 1987), *see Kane*, 876 F.2d at 735, it has waived any challenge to the district court's miscomputation of Turner's sentence in his favor.

---

**4.** Turner's base offense level for trafficking 500 or more grams of cocaine is 36. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(a)(3). Because Turner accepted responsibility for the instant offense by pleading guilty, the offense level was reduced by two levels to 34. *See id.* at § 3E1.1.

**5.** Turner had one prior criminal conviction for which two points are assigned. United States Sentencing Commission, *Guidelines Manual* § 4A1.1(b). One point is added because Turner committed the instant offense less than two years following his release from custody for the sentence imposed for his prior conviction. *Id.* at 4A1.1(e).

### 4. Equal Protection

■ Finally, Turner contends that the sentencing guidelines, as applied to cocaine base, are unconstitutional as a denial of equal protection. However, Turner fails to support this contention with any argument, choosing instead to adopt the arguments of unspecified co-defendants who "may raise this issue". Thus, Turner has abandoned the equal protection issue. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988).

## C. Beler

Beler pled guilty to conspiring to distribute cocaine base in violation of 21 U.S.C. § 846 (count I). On February 10, 1989, he was sentenced under the sentencing guidelines to a 41-month term of imprisonment followed by a three-year period of supervised release. Beler raises three issues on appeal, all of them relating to due process.

### 1. Number of Cocaine Sales

■ First, Beler contends that the district court denied him due process by finding that he was involved in twenty sales of cocaine base.[6] Over Beler's objection, the district court credited the testimony of a government informant for its finding that Beler was involved in twenty sales. Beler emphasizes that, at trial, the informant repeatedly testified that she had bought cocaine from Beler approximately six to twelve times. Government Agent Bland testified at Beler's preliminary hearing that the informant had told him that she had observed Beler selling cocaine on at least twenty occasions. The district court might have been referring to the informant's

statement to Agent Bland in crediting the informant's testimony regarding Beler's sales.[7]

However, the district court based its written findings of fact for sentencing purposes upon the government informant's "trial testimony". Because the government informant testified at trial to Beler's involvement in approximately six to twelve cocaine sales, the district court clearly erred in finding that Beler was involved in twenty sales based on the informant's trial testimony.[8] Therefore, we vacate Beler's sentence and remand for resentencing.

### 2. Burden of Proof

Beler further contends that the government failed to meet its burden of proof with respect to the number of sales attributed to him and the amount of drugs involved in those sales. Remand for resentencing renders discussion of Beler's burden of proof challenges unnecessary.

### 3. Sales in Furtherance of Conspiracy

■ Beler also faults the district court for attributing the twenty drug sales to him for purposes of sentencing without finding that those sales were in furtherance of the conspiracy to which he plead guilty. Beler contends that the court thereby sentenced him in violation of Guidelines § 2D1.4 and Fed.R.Crim.P. 32(c)(3)(D)(ii).

The application notes to Section 2D1.4 provide, in relevant part, as follows:

> If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct

---

**6.** Because the district court found that each sale was at least one-tenth of a gram, it determined Beler's offense involved 2 grams of cocaine base. Thus, the district court concluded Beler's base offense level to be 20. Beler contends that his base offense level should be twelve, the lowest base offense level applicable to cocaine-related offenses, on the ground that the government failed to prove the number of drugs sold necessary to support his assigned base offense level. The author of Beler's presentence investigation report made no recommendation concerning Beler's base offense level because he found that the amount of drugs that Beler conspired to distribute was unknown.

**7.** There is no inconsistency between the informant's and Agent Bland's testimonies. While the informant may have purchased cocaine from Beler on only twelve occasions, she may have observed Beller selling cocaine to others on twenty occasions.

**8.** It may be possible that the district court determined that Beler was involved in twenty cocaine sales by virtue of his being accountable for his co-conspirators' acts. However, the district court made no such finding in response to Beler's objections to holding him accountable for those acts.

or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.

Beler's presentence investigation report did not include a determination of the applicable guideline level because "the defendant withdrew from the conspiracy prior to any controlled purchases being made by informants or the seizure of any drugs ..." At sentencing, Beler's counsel noted the government's agreement with the presentence investigation report regarding Beler's withdrawal from the conspiracy. He argued that sales attributed to Beler were not shown to be in furtherance of the conspiracy, and therefore could not be utilized in calculating Beler's base offense level.

The application notes to Guidelines § 2D1.4 make it clear that only drug sales which were in furtherance of the conspiracy to which Beler pled guilty could be considered by the district court in sentencing Beler. *See United States v. Warters,* 885 F.2d 1266, 1272 (5th Cir.1989). The government contends that any sales after Beler's withdrawal from the conspiracy could be considered for sentencing purposes as "relevant conduct." However, the Relevant Conduct section must be read in conjunction with section 2D1.4. which, by its explicit terms, limits the sentencing court's consideration of a defendant's or co-conspirator's conduct to that conduct which was in "furtherance of the conspiracy [and] was known to the defendant or was reasonably foreseeable." *Guidelines Manual,* § 2D1.4. Thus, the district court erred by calculating Beler's base offense level on the basis of his cocaine sales without finding that the sales were in furtherance of the conspiracy for which Beler was convicted. *See Warters,* 885 F.2d at 1272–1273. The district court's failure to make such a finding in light of Beler's objection violated Fed.R.Crim.P. 32(c)(3)(D)(ii) and is further reason for remand. *See Sharon,* 812 F.2d at 1234; *Messer,* 785 F.2d at 834.

### D. Smith

Smith pled guilty to distributing more than fifty (50) grams of cocaine base in furtherance of the conspiracy charged in count I, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (count IV). On January 20, 1989, Smith was sentenced under the sentencing guidelines to a an 18–year term of imprisonment followed by a five-year term of supervised release. Smith raises four issues on appeal.

### 1. Motion for Withdrawal of Guilty Plea

■■ Smith contends that the district court erred at sentencing by denying his motion to withdraw his guilty plea. We review the district court's denial for an abuse of discretion. *See United States v. Johnson,* 760 F.2d 1025, 1026 (9th Cir. 1985).

■■ Under Fed.R.Crim.P. 32(d), the "defendant bears the burden of demonstrating a fair and just reason for withdrawal" of his guilty plea. *United States v. Rios–Ortiz,* 830 F.2d 1067, 1069 (9th Cir.1987). Like the defendant in *Rios–Ortiz,* Smith "[did] not challenge the adequacy of his Rule 11 hearing nor [did] he allege newly discovered evidence, intervening circumstances or any other reason for withdrawing his guilty plea that did not exist when he pleaded guilty." *Id.* When making his request to withdraw his guilty plea, Smith merely stated, "I feel that I am being blamed for a lot of stuff I didn't do." The district court did not abuse its discretion by ruling that this unsupported protest was not a fair and just reason for withdrawal. *See id.* (change of heart does not warrant withdrawal).

### 2. Late Delivery of Presentence Investigation Report

Smith contends that the district court erred by denying his motion for reconsideration and resentencing because he was prejudiced by late receipt of his presentence investigation report. This contention lacks merit.

■■ Under 18 U.S.C. § 3552, the presentence investigation report must be disclosed to the defendant, his counsel, and the government attorney at least ten days before sentencing unless the defendant

waives the minimum period. *United States v. Schlette,* 842 F.2d 1574, 1578, amended, 854 F.2d 359 (9th Cir.1988). Section 3552 provides no indication of what constitutes waiver. A General Order of the district court directed that, in cases involving application of the sentencing guidelines, the probation officer provide a copy of the presentence report to defense counsel twenty-eight days before the date of sentencing.

In support of Smith's motion for reconsideration and resentencing, his counsel declared that the presentence investigation report was made available to Smith on January 13, seven days before his sentencing. At sentencing, Smith asked for a continuance to February 10, the date that his brother, another co-defendant, was being sentenced. Smith gave no reason why a continuation of sentencing was needed, nor did he complain that late receipt of the presentence investigation report had prejudiced him. Thus, Smith effectively waived his right to an earlier receipt of the report. Moreover, Smith fails to explain in his brief how he was prejudiced by late receipt of the report. In the absence of any prejudice, the late delivery of the report is harmless error. *See* Fed.R.Crim.P. 52(a); *United States v. Wright,* 873 F.2d 437, 445 (1st Cir.1989) (any error in late delivery of addendum to presentence investigation report was harmless).

### 3. Due Process

Smith also contends that the district court erred by denying his motion for reconsideration and resentencing because the district court's sentencing denied him due process. His contention is twofold.

■ First, Smith asserts that he was not given an adequate opportunity to address sentencing concerns because of "vastly changed circumstances." It seems that Smith was referring to is the Supreme Court's ruling in *Mistretta,* which upheld the constitutionality of the SRA on January 18, 1989, two days before Smith's sentencing. In support of Smith's motion for reconsideration and resentencing, Smith's counsel stated:

If I had known in advance that the Supreme Court would have issued its ruling when it did, my sentencing preparation would have differed in that I would have addressed the inappropriate application of the guidelines to Mr. Smith's particular case and attempted to present a cogent and convincing case for a lower sentence than the one he received.

However, Smith's counsel became aware of the *Mistretta* ruling on January 18th and had an opportunity to discuss the ramifications of the ruling prior to Smith's sentencing. At sentencing, neither Smith nor his counsel informed the district court that more time was needed to discuss application of the sentencing guidelines. In the absence of a reason to continue sentencing, the district court denied Smith's motion for continuance. Smith has failed to demonstrate that the district court's subsequent ruling denying his motion for reconsideration and resentencing was an abuse of discretion. Moreover, it is hard to see how more time to consider application of the guidelines would have affected Smith's response to his sentencing recommendation since he was aware on January 13 that the author of the presentence investigation report would recommend a twenty-year term of imprisonment, two years more than the term he actually received.

■ Second, Smith contends that the district court denied him due process by aggregating the cocaine base charged in Smith's indictment to determine his base offense level. Smith's presentence investigation report determined his sentencing guideline range to be 188–235 months, based on a criminal history category of I and a total offense level of 36. The district court implicitly adopted the report's determination by sentencing Smith to an 18–year term of imprisonment. Smith's argument goes to the district court's reliance on the presentence investigation report in assigning Smith a base offense level of 36 on account of government agents having purchased at least 945 grams of cocaine from Smith and his co-defendants. *See Guidelines Manual* § 2D1.1(a)(3).

Before entering his guilty plea, Smith admitted to his involvement in the charged conspiracy and to the distribution of crack cocaine when government agents purchased over 945 grams of cocaine. Smith's challenge to the district court's aggregation of the drugs involved in his crack cocaine distribution scheme fails for the same reasons that Turner's challenge fails.

## CONCLUSION

We affirm Turner's sentence but remand to the district court and direct that it comply with Fed.R.Crim.P. 32(c)(3)(D). We vacate Beler's sentence and remand to the district court and direct that it resentence Beler. We affirm Smith's sentence.