**UNITED STATES of America, Appellee,**

v.

**Martin Thomas LAWRENCE, Appellant.**

**No. 89–2602NI.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1990.

Decided Nov. 5, 1990.

Rehearing and Rehearing En Banc Denied Dec. 18, 1990.

---

70

Richard Zimmerman, Iowa City, Iowa, for appellant.

Richard Murphy, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

ARNOLD, Circuit Judge.

This is a direct appeal of a sentence imposed in a drug conspiracy case. On September 21, 1988, Martin Thomas Lawrence pleaded guilty to conspiring to distribute, and to possessing with the intent to distribute, marijuana and 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. The conspiracy covered a five-year period from 1983 to the spring of 1988. Before the guilty plea, Lawrence entered into an agreement with the government obligating him to cooperate in other narcotics investigations, as well as to provide truthful information concerning the extent of the conspiracy with which he was charged. Nearly a year after his plea was entered, Lawrence was sentenced by the District Court[1] to 262 months of imprisonment, four years of supervised release, and a $50 special assessment.

Lawrence challenges each step of the calculation of his sentence under the Sentencing Guidelines. First, the District Court determined that Lawrence had been involved in trafficking in the equivalent of 5 to 14.9 kilograms of cocaine. This amount yields a base offense level of 32. Second, Lawrence was assessed three points for acting as a "manager or supervisor" in the drug-distribution conspiracy. Third, the District Court added two points for obstruction of justice. The resulting total offense level of 37, and a Criminal History Category of III, placed Lawrence in the range of 262 to 327 months in custody. Lawrence was sentenced to the minimum time period in this range. We affirm.

I.

The Presentence Report listed some twenty-five different transactions in illicit drugs allegedly associated with Lawrence during the conspiracy. The Report stated that the total amount of drugs attributable to Lawrence was the equivalent of 7.57 kilos of cocaine (or a heroin equivalency of 1,514 grams). At sentencing, Lawrence objected to most of the amounts used to calculate his base offense level. The District Court, however, found that sufficient evidence existed to support the probation officer's conclusion that Lawrence was involved with 5 to 14.9 kilos of cocaine.[2] Tr. 124. On this appeal, Lawrence claims error in the inclusion of the drugs in ten of the transactions.[3]

We begin our review with the largest of these ten transactions. Paragraph 11 of the Presentence Report related an incident in 1985 when Lawrence accompanied Mark Stearns on a trip to Chicago.

1. The Hon. David R. Hansen, United States District Judge for the Northern District of Iowa.

2. The District Court reduced the 36 pounds of marijuana in paragraph 14 of the Report to 10 pounds. Tr. 119. The Court also found insufficient evidence to support the 907 grams of marijuana in paragraph 29. Tr. 123. Because the Report's weights were adopted for all of the other drug transactions, we calculate the total weight found by the District Court to be approximately 7.51 kilos of cocaine, not the 7.57 figure in the Report (a difference of 63.5 grams of cocaine, the equivalent of the amount of marijuana discounted in paragraphs 14 and 29).

3. These transactions are described in the Presentence Report at paragraphs 9, 11, 13, 17, 18, 20, 22, 24, 31, and 32.

There Stearns purchased two kilos of cocaine. Stearns kept the cocaine upon their return to Cedar Rapids. Lawrence testified that he did not know the purpose of the trip at the outset, nor did he receive any of this cocaine or otherwise profit from it. Tr. 76–77. Lawrence claims the government offered insufficient proof that he knowingly accompanied Stearns to Chicago to purchase cocaine.

We think there was sufficient evidence for the District Court to conclude that at some point during the trip, Lawrence knew that he and Stearns were in possession of two kilograms of cocaine. Stearns testified at the sentencing proceeding that he could not recall whether Lawrence knew the reason for going to Chicago, but that part of the time Lawrence carried the leather pouch which Lawrence knew contained cocaine. Tr. 50–52. Lawrence himself admitted that he knew Stearns had purchased cocaine while they were in Chicago. Tr. 76–77. Andy Falco testified that Lawrence later told him about walking around Chicago with "three kilos of cocaine." Tr. 38. Lawrence had previously dealt in illicit drugs with Stearns. Lawrence is accountable for those drug transactions handled by Stearns which he knew about or could reasonably foresee, regardless of whether he knew beforehand that the trip to Chicago was for the purpose of buying cocaine. See U.S. S.G. § 1B1.3, Application Note 1. Therefore, the two kilos of cocaine from this incident were properly included in the calculation of Lawrence's base offense level.

We next consider whether 481.95 grams of cocaine from drug dealings in the fall of 1987 were properly assessed against Lawrence. Paragraph 13 of the Presentence Report attributes to Lawrence several amounts of cocaine sold to Scott Nischwitz by Stearns. Lawrence denies that he set up any of these transactions or requested that Stearns sell cocaine to Nischwitz. Stearns testified, however, and Lawrence admitted, that Stearns promised Lawrence a $3,000 credit against a debt he owed Stearns for one nine-ounce sale to Nischwitz. Tr. 55, 73. Lawrence also admitted knowledge of other sales to Nischwitz totalling at least four, but possibly as much as twelve, ounces of cocaine. (The probation officer who prepared the report suggested a "middle figure" of eight ounces for these other transactions, accounting for the 481.95 grams (17 ounces) listed in paragraph 13.) We think the fact that Lawrence profited from one of the transactions, and knew about the others, is sufficient to show a conspiratorial involvement.

Because we hold that these amounts of cocaine—the two kilos from the Chicago trip and the 481.95 grams sold by Stearns to Nischwitz—were properly included in calculating Lawrence's base offense level, it is unnecessary for us to consider the other eight transactions as to which Lawrence assigns error. Excluding the total amount of drugs from these eight transactions would not change the base offense level of 32, since the total amount attributed to Lawrence would still fall within the 5 to 14.9 kilo range.[4] Moreover, because Lawrence received the minimum sentence in the sentencing range available to the District Court, he cannot argue persuasively that exclusion of these eight transactions would have made any difference in the sentence he received.

## II.

Next Lawrence challenges a three-point assessment for his role as a "manager or supervisor" in the drug conspiracy, based upon U.S.S.G. § 3B1.1(b). Lawrence did not object at sentencing to this three-point assessment, and so the issue is not properly preserved for appeal. But had the District Court considered the question, we think there was sufficient evidence for it to conclude that Lawrence acted as a manager of the many drug transactions over the course of the conspiracy. As the Report stated, Lawrence "procured drugs, stored them, sold them to more than

4. The amounts listed in paragraphs 9, 17, 18, 20, 22, 24, 31, and 32 total the equivalent of 2.15 kilos of cocaine. Subtracting this amount from the 7.51 kilos attributed to Lawrence by the District Court (see note two above) still leaves 5.36 kilos.

several other people and paid his suppliers." Report, ¶ 42. To be a manager, a defendant in a drug conspiracy need not control or manage the activities of the co-conspirators—it is sufficient that the facts show that the defendant managed the criminal activity. See *United States v. Johnson*, 906 F.2d 1285 (8th Cir.1990). In this case, Lawrence managed and profited from extensive drug dealings with several persons over a period of five years.

### III.

■ Finally, Lawrence appeals the District Court's decision to deny him a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, and assess a two-level penalty for obstruction of justice, U.S.S.G. § 3C1.1. Lawrence did not ask the Court for an adjustment for acceptance of responsibility, nor did he object at sentencing to the probation officer's recommendation that the adjustment be denied. Thus, Lawrence cannot raise this issue now.

■ The government proved that, after he entered his guilty plea, Lawrence lied on several occasions concerning the extent of his past drug dealings, not only to investigators but also to the probation officer assigned to his case. Not only did Lawrence thereby break a term of his plea agreement with the government, a ground sufficient to deny credit for acceptance of responsibility, but his deception also qualified for an upward adjustment for obstructing justice under U.S.S.G. § 3C1.1. Application Note 1(e) states that "furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court" is another ground that may provide the basis for applying the adjustment. Further, Application Note 1(c) includes "testifying untruthfully ... during a ... sentencing proceeding, or any other judicial proceeding" among the conduct that may constitute obstruction of justice. The Court noted that Lawrence had provided "diametrically opposed testimony" to investigating officers, the probation officer, and even at the sentencing proceeding. Tr. 130–31. We think the two-level enhancement was appropriate here.

■ Lawrence contends that he was punished for his failure to confess the full extent of his drug involvement, a violation of his Fifth Amendment right not to incriminate himself. See, *e.g., United States v. Watt*, 910 F.2d 587 (9th Cir.1990) (refusal to grant acceptance-of-responsibility reduction may not be based on constitutionally protected conduct, such as refusing to make any statement to the police or to assist them in gathering inculpatory evidence). But Lawrence was punished not for failure to confess fully the amount of drugs with which he was associated, but for lying during the investigation and sentencing proceedings. Lawrence voluntarily agreed to reveal to the government all of his past drug dealings. He then changed his story several times. As a result, an amended Presentence Report had to be prepared. Any Fifth Amendment right not to reveal the full extent of his criminal activity was waived when Lawrence entered the plea agreement, as well as each time thereafter when he volunteered different information.

Accordingly, the sentence of the District Court is affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I respectfully dissent. Without adequate proof, the district court sentenced a twenty-six-year-old man to more than twenty-one years of imprisonment for conduct allegedly connected to a drug conspiracy. This sentence is plainly erroneous and constitutionally intolerable.

Under the Guidelines, only drug sales in furtherance of the conspiracy to which the defendant pled guilty may be used to calculate base offense level. *United States v. Turner*, 898 F.2d 705, 713 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990); U.S.S.G. § 2D1.4, comment. (n. 1) (Oct.1987) (amended Nov. 1, 1989).[1] This limitation persists notwithstanding the potentially broader conduct

---

**1.** The relevant Guidelines provisions are those in effect at the time of sentencing. *See* 18 · U.S.C. § 3553(a)(4)–(5) (1988). Lawrence was sentenced on September 18, 1989.

encompassed by the Guidelines' relevant conduct provisions, *see* U.S.S.G. § 1B1.3 (Oct.1987) (as amended Jan. 15, 1988) (amended Nov. 1, 1989). *Turner*, 898 F.2d at 713.[2]

In a one-count indictment, the Government accused Lawrence of conspiring with unnamed persons to distribute 500 grams or more of cocaine and an undetermined amount of marijuana. At the plea hearing, Lawrence admitted conspiring with Joe Newland, Chris Mottinger, Mark Stearns and Roger Stockman to distribute up to a pound and a half of cocaine (approximately 682 grams) and thirty pounds of marijuana. Plea tr. at 33. Aside from this admission, the record contains virtually no description of the particular, functioning conspiracy to which Lawrence pled guilty. Neither the Presentence Report nor Government counsel ever defined the membership or scope of the conspiracy alleged in the indictment. Moreover, neither the Presentence Report nor the Government ever attempted to relate the drug quantities used to enhance Lawrence's sentence to the particular conspiracy alleged.

To the contrary, the Presentence Report description of offense conduct consisted of a random listing of drug sales in no apparent chronological or otherwise discernable order. Additionally, the Presentence Report frequently made no attempt to determine when or to whom the drugs were distributed, *see, e.g.*, ¶¶ 11–12, 16, 22–23, 30, or whether the conspiracy provided the drugs or aided their distribution, *see, e.g.*, ¶¶ 8, 13, 16–24, 30–32. As a result, the Presentence Report may have double-counted drug quantities or included drug quantities that came from conspiracies not charged by the indictment. In any event, the record shows no proper tie-in between the charged conspiracy and the drug tabulation. *See United States v. North*, 900 F.2d 131, 133–34 (8th Cir.1990).

For similar reasons, the enhancement for obstruction of justice must also fall. In approving the obstruction enhancement, the majority makes much of the fact that

Lawrence provided false information to the district court and probation officer. But on analysis, the district court and the probation officer confused Lawrence's obligation under the Guidelines to provide the court with truthful information *about the offense of conviction* with Lawrence's obligation under the plea agreement to provide the Government with incriminating information *without limitation*. With respect to the latter obligation, the Government's remedy in the event of a breach was to revoke Lawrence's plea agreement. The Government chose to forego this option. *See* sent. tr. at 104–09 (July 24, 1989).

As to the former obligation, the Government must prove that Lawrence's statements to the court or probation office contained material falsehoods, *see* U.S.S.G. § 3C1.1, comment. (nn. 1(c), (e)) (Oct.1987), when viewed in the light most favorable to Lawrence, *see* U.S.S.G. § 3C1.1, comment. (n. 2) (Oct.1987). Seemingly then, any alleged misstatement must involve conduct (1) relevant to the conspiracy charged, and (2) not accounted for by Lawrence's previous admissions. In view of the Government's failure to coherently delineate the conspiratorial conduct alleged here, the Government cannot be said to have met this burden.

Besides this, the obstruction enhancement was fundamentally unfair. Lawrence pled guilty and cooperated with the Government. Equally important, the Government conceded that Lawrence's assistance was an important factor in holding another "cooperating defendant" to the full disclosure terms of his plea bargain.

Under the circumstances, Lawrence's sentence violates fundamental concepts of due process. The enabling statute for the Sentencing Guidelines provides that "[t]he court *shall* impose a sentence of the kind, and within the range" applicable to the category of defendant set forth in the Guidelines. 18 U.S.C. § 3553(b) (1988) (incorporating by reference 18 U.S.C. § 3553(a)(4) (1988) (emphasis added)). These provisions give convicted defendants

2. Under the Guidelines, drug quantities outside the count of conviction are not, of course, irrelevant. However, such quantities may be considered only to determine the appropriate sen-

tence *within* the applicable Guidelines range or as a basis for departure. *See* U.S.S.G. § 1B1.4 & comment. (backg'd.) (Oct.1987) (as amended Jan. 15, 1988).

a protected liberty interest to a sentence within the Guidelines range appropriate for their conduct and circumstances. *Cf. Board of Pardons v. Allen,* 482 U.S. 369, 373–81, 107 S.Ct. 2415, 2418–22, 96 L.Ed.2d 303 (1987) (use of mandatory language creates liberty interest in parole release); *Hewitt v. Helms,* 459 U.S. 460, 469–72, 103 S.Ct. 864, 870–72, 74 L.Ed.2d 675 (1983) (mandatory language creates liberty interest in avoiding administrative segregation).[3] The extent of protection required depends on the need to minimize the risk of error. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 13, 99 S.Ct. 2100, 2106–07, 60 L.Ed.2d 668 (1979).

In the instant case, the deprivation is great and cannot withstand the questions raised by a careful review of the record. Here, the Government failed to delineate the conspiracy or present a reliable accounting of the drug quantities delivered in furtherance thereof. Consequently, the only remaining evidence is Lawrence's admission to conspiring to distribute approximately 682 grams of cocaine and thirty pounds of marijuana. The above drug quantities would have placed Lawrence at a base offense level of 26 rather than the level 32 that the majority approves here. *See* U.S.S.G. § 2D1.1(c)(9) & comment. (n. 10) (Oct.1987) (as amended Jan. 15, 1988) (amended Nov. 1, 1989). In addition, without the enhancement for obstructing justice, Lawrence might have qualified for a two-level decrease for acceptance of responsibility.[4] Cumulatively, such findings would have reduced Lawrence's final offense level by ten points (from level 37 to level 27), resulting in a sentencing range of 87 to 108 months.[5] In practical terms, this difference translates into an extra twelve to fifteen years in prison for Lawrence.

Lawrence's plight is by no means unusual in these days of "sentencing by the numbers." To the contrary, the Sentencing Guidelines, despite their aura of objectivity, produce results that vary with the attitudes and judgments of human beings who interpret (and often misinterpret) them. Here, the district court accorded great weight to the numerous judgment calls in the probation officer's report. I see these administrative decisions as error.

Lawrence's present sentence ought not to be affirmed. Notwithstanding defense counsel's failure to raise many proper objections, in my view this court has an independent duty to review the sentence and to reverse when plain error is demonstrated on the record. Accordingly, I would reverse Lawrence's sentence and remand for proceedings consistent with this opinion.

---

**3.** Likewise, society has an interest in promoting basic fairness and in avoiding error when depriving citizens of their liberty. *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2601–02, 33 L.Ed.2d 484 (1972).

**4.** At the time of Lawrence's sentencing, the Guidelines prohibited credit for accepting responsibility when the court imposed an en-

hancement for obstructing justice. U.S.S.G. § 3E1.1, comment. (n. 4) (Oct.1987) (amended Nov. 1, 1989).

**5.** Lawrence was in Criminal History Category III.