**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Miguel Angel CHAVEZ–GUTIERREZ,**
**Defendant–Appellant.**

**No. 91–30025.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 3, 1992 *.

Decided April 24, 1992.

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Victor H. Lara, Schwab, Kurtz and Hurley, Yakima, Wash., for defendant-appellant.

Donald E. Kresse, Asst. U.S. Atty., E.D. Wash., Yakima, Wash., for plaintiff-appellee.

Before: WRIGHT and ALARCON, Circuit Judges, and FONG, District Judge [**].

ALARCON, Circuit Judge:

Miguel Angel Chavez–Gutierrez (Chavez–Gutierrez) appeals from the sentence of 45–months' months' imprisonment imposed following his guilty plea to aiding and abetting the distribution of a controlled substance on June 28, 1990, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Chavez–Gutierrez contends that the district court erroneously applied Section 1B1.3 of the United States Sentencing Commission Guidelines Manual (Sentencing Guidelines) in calculating his offense level based on the quantity of cocaine distributed by other persons prior to June 28, 1990.

We vacate the judgment of sentence and remand to the district court because we conclude that the presentence report does not contain facts that support the district court's ruling that Chavez–Gutierrez was accountable for narcotics violations committed by others prior to June 28, 1990.

I.

On July 17, 1990, Chavez–Gutierrez and five others were charged in a seven-count indictment. Chavez–Gutierrez was named in two counts. Count one of the indictment charged Chavez–Gutierrez and his five co-defendants with conspiring between January 1, 1990 and July 11, 1990 to distribute 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count seven charged Chavez–Gutierrez with the distribution of 252 grams of cocaine on or about June 28, 1990. Count six charged Guillermo Chavez with use of a communication facility to facilitate the distribution of cocaine on June 28, 1990. The remaining counts alleged the distribution of cocaine by persons other than Chavez–Gutierrez prior to June 28, 1990.

On September 24, 1990, a superseding information was filed charging Chavez–Gutierrez with aiding and abetting Roberto Carrasco–Gutierrez in the distribution of 252 grams of cocaine on June 28, 1990, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Chavez–Gutierrez waived prosecution by indictment and pleaded guilty to the charge in the superseding information. The district court dismissed the original indictment against Chavez–Gutierrez.

The probation department prepared a presentence report which set forth the following facts. On May 1, 1990, the Yakima Office of the Drug Enforcement Agency (DEA) targeted Guillermo Chavez for investigation after receiving information from an informant that $10,010 seized in a search of an automobile on April 19, 1990 were drug trafficking proceeds belonging to Guillermo Chavez.

On April 23, 1990, DEA agents found 4.5 ounces of cocaine during the search of an automobile. The two individuals in the vehicle informed DEA agents that Guillermo Chavez and his brother Gilberto Chavez [1] were selling cocaine in the Yakima Valley Area.

On June 20, 1990, a confidential informant told DEA agents that he had purchased cocaine from Guillermo Chavez over

---

[**] Honorable Harold M. Fong, Chief Judge, United States District Court for the District of Hawaii, sitting by designation.

**1.** The defendant Chavez-Gutierrez is the brother of Guillermo and Gilberto Chavez. Chavez-Gutierrez lived with Guillermo Chavez from June 15, 1990 until his arrest.

the last four months. The informant stated that he had purchased 252 grams from Guillermo Chavez on June 11, 1990.

On June 20, the same informant contacted Guillermo Chavez to arrange a meeting for the purchase of 363 grams of cocaine and to pay for the 252 grams the informant had received on June 11, 1990. Guillermo Chavez and Eleiser Bonilla met the informant at a prearranged location. The informant paid Guillermo $3000 for the June 11th delivery. Trinidad Marina Santana arrived at the location in a separate vehicle and delivered 252 grams of cocaine to the informant.

On June 28, 1990, the informant contacted Guillermo Chavez to make arrangements to purchase an additional quantity of cocaine and to pay for the delivery made on June 20, 1990. Guillermo Chavez and the informant agreed that they would meet that evening at a K–Mart parking lot. Roberto Carrasco–Gutierrez and Chavez–Gutierrez arrived together at the meeting place. Chavez–Gutierrez received $4000 from the informant. Roberto Carrasco–Gutierrez then handed the informant a package containing 252 grams of cocaine.

None of the informants provided any information connecting Chavez–Gutierrez to the distribution of cocaine prior to the June 28, 1990 transaction. The presentence report noted that Chavez–Gutierrez told the probation officer that he did not know where Roberto Carrasco–Gutierrez had obtained the cocaine for the June 28th transaction. Chavez–Gutierrez informed the probation officer that Roberto Carrasco–Gutierrez had told him only that they were going to deliver drugs. Chavez–Gutierrez also informed the probation officer that he had never sold drugs before, had never been involved in any other drug transactions, and did not know that Guillermo Chavez sold drugs.

The report did not set forth any facts showing that Chavez–Gutierrez was a member of the conspiracy before June 28, 1990. Relying upon Section 1B1.3(a)(2), the probation officer concluded that the "(r)elevant conduct in this case would involve all counts of the indictment and all drugs in those counts." The probation officer rec-

ommended that Chavez–Gutierrez be held responsible for the distribution of 840 grams of cocaine, the total amount of cocaine distributed on June 11, 1990, June 20, 1990, and June 28, 1990.

In a letter dated November 15, 1990, Chavez–Gutierrez's attorney Victor H. Lara objected to the probation officer's reliance upon the drug quantities involved in the June 11th and June 20th transactions in calculating Chavez–Gutierrez's base offense level. Mr. Lara stated in his letter that "in order to consider the cocaine deliveries of June 11 and June 20, 1990, ... the Court must find that Chavez was somehow involved or tied to those deliveries.... Chavez submits that the facts and circumstances do not support a finding that he was involved in the deliveries of June 11 and June 20."

The probation officer responded to Mr. Lara's letter in an addendum dated November 19, 1990. The probation officer reported that "Mr. Chavez was convicted of an offense cited under Section 3D1.2(d) which would require grouping of multiple counts, and therefore, relevant conduct includes, 'all such acts and admissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.' "

At the sentencing hearing, the district court stated that it was aware of Chavez–Gutierrez's "rather detailed objections" regarding how the presentence report "interpreted and applied" the guidelines. The district court then asked Mr. Lara whether "there [is] anything about the factual data [in the report] that either you or your client feel need to be corrected or amended?" Mr. Lara responded, "No Your Honor. I did review the presentencing report with Miguel [Chavez–Gutierrez], and all the objections we made were filed in written form, *so there are no other objections or corrections to be made* as far as the accuracy of the contents of the report." (emphasis added). Mr. Lara then renewed his objection to the application of Section 1B1.3(a)(2) of the Sentencing Guidelines, arguing that the facts set forth in the presentence report did not show that Chavez–Gutierrez was connected to the June

11, 1990 and June 20, 1990 cocaine sales. In calculating the amount of time that Chavez–Gutierrez should serve, the district court included the amount of cocaine distributed on June 11, 1990 and June 20, 1990.

## II.

■ Chavez–Gutierrez contends that the district court erred in including the June 11, 1990 and June 20, 1990 sales in calculating his base offense level. He insists the facts in the presentence report do not show that he participated in those transactions or that he was a member of a conspiracy to distribute cocaine prior to June 28, 1990.

■ We review a district court's application of the sentencing guidelines de novo. *United States v. Howard*, 894 F.2d 1085, 1087 (9th Cir.1990). We must accord "due deference to the district court's application of the guidelines to the facts." *Id.* at 1087 (quoting 18 U.S.C. § 3742(e)). The district court relied on Section 1B1.3(a)(2) in calculating the base offense level on the amount of cocaine distributed by other persons on June 11, 1990 and June 20, 1990, as alleged in the original indictment. Section 1B1.3(a)(2) provides, in relevant part, that where "§ 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of the conviction" are included in setting the base offense level. U.S.S.G. § 1B1.3(a)(2). Section 3D1.2(d) requires a grouping where the "offense level is determined largely on the basis of ... the quantity of substance involved." U.S.S.G. § 3D1.2(d).

Application Note 2 to Section 1B1.3(a)(2) explains that the words "same course of conduct, scheme, or plan" refer to "acts and omissions committed or aided and abetted by the defendant or for which the defendant would otherwise be accountable." U.S.S.G. § 1B1.3, Application note 2. Application Note 1 defines conduct "for which the defendant would be otherwise accountable" as used in 1B1.3(a)(1) as "conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defen-

dant." U.S.S.G. § 1B1.3, Application note 1.

In short, under Section 1B1.3(a)(2), a district court must include the total amount of a controlled substance alleged in multiple counts if the defendant could have reasonably foreseen that other persons would commit the alleged crimes in furtherance of a joint agreement. The district court could not include the amount of cocaine distributed on June 11, 1990, and June 20, 1990, in calculating Chavez–Gutierrez's base offense level, unless the presentence report set forth facts showing that the defendant aided and abetted these sales or was a member of a conspiracy to distribute cocaine prior to June 28, 1990. The district court appears to have concluded that Section 1B1.3 is applicable in calculating the offense level even if Chavez–Gutierrez was not criminally liable for the distribution of cocaine that occurred on June 11, 1990, and June 20, 1990. The presentence report contained no facts showing that he aided and abetted the distribution of cocaine or that he was a member of a conspiracy to do so prior to June 28, 1990. Indeed, Chavez–Gutierrez's denial that he was involved in the distribution of cocaine prior to June 28, 1990 is uncontradicted in the presentence report. Nevertheless, the district court attributed the amount of narcotics involved in the three cocaine sales to Chavez–Gutierrez in calculating his offense level. At the sentencing hearing, the judge responded to Chavez–Gutierrez's objections by stating:

> The argument that you make concerning the guidelines would be appealing, except for the clear instruction in them in 3D1.2(d), where it would require the grouping of such multiple counts of drug cases.
>
> Now, it's not for this court to quarrel with or credit the wisdom of that distinction, which is well stated by the author of the presentencing report and in his addendum following your challenge....
>
> It's probably true in conspiracies for other kinds, but in this conduct which has captured the focus of the guidelines, there's obviously a thought that conspiracies can't function without the people in

line. And they may be lieutenants and sergeants and not generals. But they nonetheless are essential to its operation. . . .

And that grouping requirement obviously keys the guidelines, and the Court must reject your argument in that respect.

[R.T. 12–7–90]. Thus, the district court appears to have adopted the erroneous legal conclusion set forth in the presentence report and the addendum concerning the applicability of Section 3D1.2(d) to Chavez–Gutierrez. As noted above, the presentence report concluded that "[r]elevant conduct in this case would involve all counts of the indictment and all drugs in those counts." The addendum explained the probation officer's interpretation of the law as follows:

Mr. Lara cites Section 1B1.3(a)(1) and the commentary in Application Note 1 and states that Mr. Chavez should not be held accountable for all acts and omissions, "for which the defendant would otherwise be accountable that occurred during the commission of the offense of conviction and preparation for that offense or in the course or attempting to avoid detection." I agree with Mr. Lara as far as he goes. This officer applies the relevant conduct of the entire conspiracy to Mr. Chavez based on 1B1.3(a)(2) which refers to offenses solely of a character for which Section 3D1.2(d) would require the grouping of such multiple counts in drug cases. In that section which is much broader than the one cited by Mr. Lara, it states, "all such acts and admission that were part of the same course of conduct or common scheme or plan as the offense of conviction are to be included as relevant conduct."

Section 1B1.3(a)(2) is a much broader application of relevant conduct than contained in (a)(1).

In this regard, Mr. Lara cites Example E [in the Guidelines book] under Section 1B1.3 which involves a marijuana importation charge. The example indicates that a participant of the conspiracy offloaded one shipment of marijuana and was therefore liable under relevant conduct only for that shipment of marijuana and not for the others proceeding his actions.

Example 'E' does in fact bring into play Section 1B1.3(a)(1) and refers to acts for which the defendant would otherwise be accountable. However, the illegal transfer or transshipment of a controlled substance is contained in Section 2D3.4 of the guidelines. That particular guideline is not one of those cited in Section 3D1.2(d) which would call for the expanded use of relevant conduct. Rightfully so in the example the third defendant in the case was not tagged if you will with all of the previous activity by the other co-conspirators. The reason he was not is that the illegal transshipment of a controlled substance is not within one of those offenses which normally require grouping of multiple counts.

It is clear from the addendum that the probation officer misinterpreted Section 1B1.3(a)(2) as mandating the grouping of the counts, whether or not the defendant could be held criminally accountable for the alleged crimes.

We consider a similar issue in *United States v. Turner*, 898 F.2d 705 (9th Cir. 1990), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990). In *Turner*, appellant Beler contended that the district court violated Section 2D1.4 of the Sentencing Guidelines by attributing twenty drug sales to him for purposes of sentencing, without finding that the sales were in furtherance of the conspiracy to which he pleaded guilty. *Id.* at 713. The presentence report did not include a determination of the applicable guideline level because " 'the defendant withdrew from the conspiracy prior to any controlled purchases being made by informants or the seizure of any drugs . . .' " *Id.* At sentencing, Beler's attorney argued that the sales attributed to Beler were not shown to be in furtherance of the conspiracy and therefore could not be utilized in calculating his offense level. *Id.* The Government contended that any sales after Beler's withdrawal from the conspiracy could still be

considered "relevant conduct" for sentencing purposes. *Id.*

We held in *Turner* that under Section 2D1.4, only drug sales which were in furtherance of the conspiracy can be considered by the district court in sentencing a conspirator. *Id.* We concluded that the district court erred in attributing the twenty narcotics sales to Beler without first finding that the sales were in furtherance of the conspiracy for which he was convicted. *Id.* at 713.

■ Section 1B1.3(a)(2) and Section 2D1.4 each allow a grouping of offenses only if the facts show that the defendant could be held accountable for the acts of others. U.S.S.G. § 1B1.3, Application Note 2; U.S.S.G. § 2D1.4, Application Note 1. Accordingly, our reasoning in *Turner* regarding Section 2D1.4 is applicable to Section 1B1.3(a)(2).

As discussed above, in the instant matter, the district court did not make a finding that Chavez–Gutierrez was criminally responsible as a conspirator or an aider and abetter for the sales of cocaine that occurred on June 11, 1990 or June 20, 1990. The district court erred in including the amount of cocaine involved in the earlier sales, without making a finding, based on facts in the presentence report, that he was responsible for that conduct. *See United States v. Warters*, 885 F.2d 1266, 1272 (5th Cir.1989) (because amount of drugs with which defendant was involved was disputed, district court's failure to make any finding pursuant to Section 2D1.4 concerning the amount of marihuana defendant had knowledge of or was involved with was error).

■ We reject the Government's argument that the district court did not have to make express findings that Chavez–Gutierrez was involved in the distribution of cocaine on June 11, 1990 and June 20, 1990, because he failed to object to the factual accuracy of the statements in the presentence report. Chavez–Gutierrez expressly directed the district court's attention to the failure of the presentence report to set forth facts that would support a finding that he was accountable for the earlier sales.

The Government's reliance on *United States v. Mir*, 919 F.2d 940 (5th Cir.1990), *United States v. Turner*, 898 F.2d 705, and *United States v. Rigby*, 896 F.2d 392 (9th Cir.1990), is misplaced. In *Mir*, the defendant objected to the accuracy of the presentence report which set forth detailed facts implicating the defendant in several narcotics transactions. 919 F.2d at 943. In *Turner*, Turner objected to the inclusion of statements in his presentence report mentioning the alleged use of a pistol in the conspiracy, not to the statements' factual accuracy. 898 F.2d at 709–10. In *Rigby*, the defendant filed a response to the presentence report in which he contended that he was entitled to a two-point reduction for his minor role in the offense because he was simply a "mule." The probation office filed an addendum to the presentence report expressly rejecting the contention that Rigby was a "minor participant." 896 F.2d at 394. In this case, the presentence report sets forth facts showing the defendant's accountability for the challenged criminal conduct. In this matter, the presentence report did not set forth any facts demonstrating Chavez–Gutierrez's involvement in the distribution of cocaine prior to June 28, 1990.

We reject the Government's contention that the sentence should stand because Chavez–Gutierrez should have requested a more definitive ruling. Chavez–Gutierrez clearly requested a finding that he was not responsible for the distribution of cocaine on June 11, 1990, and June 20, 1990. The district court ignored his request.

### III.

We vacate Chavez–Gutierrez's sentence because the presentence report lacks factual support for the district court's conclusion that it could include transactions that occurred prior to June 28, 1990 in setting Chavez–Gutierrez's base offense level. We remand for resentencing with directions that the district court make express findings regarding whether Chavez–Gutierrez

was accountable for the June 11th and June 20th transactions under Section 1B1.3.

VACATED and REMANDED.