No. 04-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 56

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ELVIS LONE ELK,

        Defendant and Appellant.


APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2001-0865,
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Robert L. Kelleher, Jr., Kelleher Law Office, Billings, Montana

      For Respondent:

        Honorable Mike McGrath, Attorney General; Ilka Becker, Assistant
Attorney General, Helena, Montan a

        Dennis Paxinos, County Attorney; Scott Twito, Deputy County
Attorney, Billings, Montana


Submitted on Briefs:  January 26, 2005

Decided:  March 8, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Elvis Lone Elk appeals from the District Court's denial of his motion to withdraw his guilty plea. We affirm.

## BACKGROUND

¶2      One night after eleven o'clock, Lone Elk went to the trailer of H.T. (Victim) looking for a woman named Jolene. It was November, and he was cold. Victim let him in and made him coffee. Lone Elk had no place to stay, so Victim made him a bed on the floor. He asked to hug her to say thank you. When Victim came close, Lone Elk grabbed her and took her into the bedroom. Three times, Victim tried to dial 911. The first two times, Lone Elk stopped her and the third time, he broke the phone. Victim screamed for help.

¶3      A neighbor in the trailer park knew Victim lived alone. He heard a frightened, panicked voice and muffled screams, so he ran to the nearest phone to call 911. Meanwhile, Lone Elk was forcing Victim to have vaginal intercourse. In a ploy to escape, Victim told Lone Elk she wanted a cigarette from the kitchen. By this time, the police had arrived. From outside the trailer, a police officer heard a woman ask for a cigarette and a man tell the woman that he did not want her screaming for help again. Seconds later, the door to the trailer burst open to reveal Victim running naked from the trailer. On her heels ran Lone Elk, naked also.

¶4      Lone Elk pleaded not guilty to sexual intercourse without consent, a crime with a maximum sentence of 100 years. Section 45-5-503(2), MCA (2001). He later decided to accept a plea bargain. Under the terms of the plea bargain, Lone Elk would plead guilty to

2

burglary, and the prosecution would recommend a sentence of twenty years with five suspended. Lone Elk's attorney was free to argue for a lesser sentence. On September 18, 2002, Lone Elk signed an Acknowledgment of Waiver of Rights by Plea of Guilty that stated, "On November 7[,] 2001, I remained unlawfully in [Victim's] home with the intent to commit a sexual assault in Yellowstone County." The District Court made the following inquiries during the change of plea colloquy:

> The Court: Mr. Lone Elk, I'll ask you then how you plead to the charge in the Amended Information of burglary, felony, alleged to have occurred in Yellowstone County, Montana, on or about November 7th through 8th, 2001?
>
> Mr. Lone Elk: Guilty.
>
> . . . .
>
> The Court: Do you also understand that, in my opinion, given the charge that you are pleading guilty to, that you could be required to complete sex offender treatment?
>
> Mr. Lone Elk: No.
>
> Ms. Anderson [Lone Elk's attorney, Kathy Anderson]: Judge, actually, we had not advised Mr. Lone Elk of that possibility.
>
> The Court: Right. I'm advising him of it now.
>
> Ms. Anderson: Okay.
>
> The Court: Are you suffering any mental or emotional disability that would prevent you from understanding what you're doing today?
>
> Mr. Lone Elk: No.
>
> The Court: Are you under the influence of drugs, alcohol or prescription medication?

3

Mr. Lone Elk: No.

The Court: Tell me what it is that you did that makes you plead guilty to the burglary charge?

Ms. Anderson: Judge, if I might have just a second with my client.

(Whereupon, an off-the-record discussion took place between Ms. Anderson and Mr. Lone Elk. [Anderson later testified that, during this discussion, she told Lone Elk that she believed the judge could not require sexual offender treatment for burglary despite that the underlying felony was intent to commit sexual assault.])

Mr. Lone Elk: On November 7th, 2001, I remained unlawfully in [Victim's] home with the intent to commit assault in Yellowstone County.

The Court: What kind of assault did you intend to commit?

Mr. Lone Elk: Sexual assault.

The Court: And do you admit that you did in fact intend to commit a sexual assault on [Victim]?

Mr. Lone Elk: Yes.

The Court: And you understand what the requirements or elements of sexual assault are?

Mr. Lone Elk: Yeah.

Ms. Anderson: Do you understand that sexual assault is sexual contact of another without that person's consent?

Mr. Lone Elk: Yeah.

The Court: So you agree, now understanding the elements of sexual assault, that you intended to commit a sexual assault on [Victim]; is that what you're telling me?

Mr. Lone Elk: Yeah.

. . . .

4

The Court: . . . . And no one has threatened you or made any promises to get you to enter into this plea of guilty to the burglary charge, correct?

Mr. Lone Elk: (Nods head.)

The Court: Is that correct?

Mr. Lone Elk: Correct.

The Court: Very well. The Court will accept your plea as being knowingly and voluntarily made. I will set this matter for sentencing, and I do wish to have a sex offender evaluation completed.

¶5 Immediately after the hearing, Lone Elk asked Anderson if he could withdraw his plea.

¶6 Lone Elk had been taking Zoloft for four weeks preceding his plea of guilty. George Sheckelton, M.D., testified that the side-effects of Zoloft include agitation, insomnia, and decreased libido. He further testified that lack of concentration is not a side-effect to taking Zoloft.

¶7 Lone Elk raises two issues:

¶8 1. Did the District Court err in not allowing Lone Elk to withdraw his guilty plea which was entered out of fear of going to trial?

¶9 2. Did the District Court err in not allowing Lone Elk to withdraw his guilty plea that he entered while he was under the influence of anti-depressant medication?

**STANDARD OF REVIEW**

¶10 Although we have historically reviewed a district court's denial of a defendant's motion to withdraw a guilty plea to determine whether the district court abused its discretion, *State v. Martin*, 2004 MT 288, ¶ 11, 323 Mont. 320, ¶ 11, 100 P.3d 146, ¶ 11, we now adopt

5

a new test of voluntariness which in turn requires a new standard of review. Determining whether facts meet the standard for voluntary pleas is a mixed question of law and fact. We review mixed questions of law and fact de novo. *Elliot v. State*, 2005 MT 10, ¶ 7, 325 Mont. 345, ¶ 7, ___ P.3d ___, ¶ 7. Thus, the proper standard for reviewing questions of voluntariness in plea agreements is de novo. Other courts have held similarly. *Lambert v. Blodgett* (9th Cir. 2004), 393 F.3d 943, 977 n.23 (citing cases from the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh United States Circuit Courts of Appeal that hold the question of plea voluntariness is a mixed question of law and fact requiring de novo review). To the extent that the *Martin* line of cases have used the abuse of discretion standard, we overrule them.

## DISCUSSION

### I. Good Cause: The *Huttinger* Test

¶11 "At any time before or after judgment, the court may, for good cause shown, permit the plea of guilty or nolo contendere to be withdrawn and a plea of not guilty substituted." Section 46-16-105(2), MCA (2001). Historically, this Court has balanced three factors in determining whether "good cause" under § 46-16-105(2), MCA, exists to permit withdrawal of a plea: (1) whether the district court adequately interrogated the defendant to determine his understanding of his plea; (2) whether the defendant promptly filed his motion to withdraw the prior plea; and (3) whether the defendant's plea was the result of a plea bargain in which the prosecutor dismissed another charge. *Martin*, ¶ 13.

6

¶12     This Court created its current good cause test in *State v. Huttinger* (1979), 182 Mont. 50, 54, 595 P.2d 363, 366. The *Huttinger* test requires only the above three factors. Curiously, none of those factors requires that the court consider the voluntariness, knowledge, or intelligence of the defendant's plea. Nevertheless, a district court will permit a defendant to withdraw his plea if the defendant can demonstrate that he entered his plea unknowingly or involuntarily. *State v. Miller* (1991), 248 Mont. 194, 197, 810 P.2d 308, 310.

¶13     The United States Supreme Court acknowledges that "[a] plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States* (1998), 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828, 837. Although we have adopted this requirement in our cases, we have never specifically articulated it as part of the good cause test. *State v. Morgan*, 2003 MT 193, ¶ 18, 316 Mont. 509, ¶ 18, 74 P.3d 1047, ¶ 18. After exhaustive review, this Court has been unable to find a case in which we have allowed a defendant to withdraw his plea for good cause other than voluntariness.

¶14     The ultimate test for withdrawal of a plea is voluntariness. Although the three-part *Huttinger* test has two factors that bear on voluntariness, it neither lists all the factors, nor are all the factors it lists necessary. Whether a district court adequately interrogated the defendant to determine whether the defendant understood his plea bears on voluntariness because it tends to show that he had all the information necessary to make an informed decision.

¶15 Whether the defendant promptly filed his motion to withdraw the prior plea does not, however, bear on voluntariness. For example, the passage of fifteen years will neither make an involuntary plea more voluntary nor a voluntary plea more involuntary. *But see State v. Haynie* (1980), 186 Mont. 374, 380-81, 607 P.2d 1128, 1132-33 (concluding that, in waiting five and one-half years to seek withdrawal of a plea, the defendant had waited too long despite the District Court's violation of § 46-16-105(1)(b), MCA (1979), by failing to inform Haynie of the maximum possible term of his sentence).

¶16 Whether the defendant's plea was the result of a plea bargain in which the prosecutor exchanged the plea for dismissal of another charge bears on voluntariness because it tends to show the defendant made an intelligent and calculated decision. This factor, however, is not dispositive. Over time, this Court has, in practice, equated good cause under § 46-16-105, MCA, with the constitutional test of voluntariness. *See Miller*, 248 Mont. at 197, 810 P.2d at 310. The time has now come to reevaluate the meaning of "good cause" and determine whether it allows withdrawal of a plea for additional reasons, other than involuntariness.

> A. *Legislative History*

¶17 The ambiguity inherent in the phrase "good cause" makes a review of the legislative history of this statute appropriate in determining the scope of the phrase. In 1967, the Legislature gave district courts permission to allow a defendant to withdraw his guilty plea for "good cause." Act Approved Feb. 28, 1967, ch. 196, 1967 Mont. Laws 353, 412 (codified at § 46-15-105(2), MCA (2001)). Good cause must include the constitutional

8

requirements such as voluntariness, for it cannot exclude them, but the dearth of legislative history and the broad wording implies that good cause could include more than the minimal constitutional requirements. *See* Minutes of S. Jud. Comm. 40th Leg. (Mont. 1967); Minutes of H. Jud. Comm. 40th Leg. (Mont. 1967).

¶18   We presume in 1967 the Legislature was aware of the constitutional requirement that pleas must be voluntary. *Ross v. City of Great Falls*, 1998 MT 276, ¶ 17,  291 Mont. 377, ¶ 17,  967 P.2d 1103, ¶ 17 (recognizing that this Court presumes the Legislature acts "with deliberation and with full knowledge of all existing laws on a subject . . . ."). The United States Supreme Court recognized the requirement as early as 1927 in *Kercheval v. United States* (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."), and this Court recognzed it in *State v. Casaras* (1937), 104 Mont. 404, 413, 66 P.2d 774, 778 ("A plea of guilty should be entirely voluntary by one competent to know the consequences, and should not be induced by fear, persuasion, promise, or ignorance."). Despite this pre-existing and clear constitutional standard of voluntariness, the Legislature adopted a standard using the phrase "good cause."

¶19   If the Legislature had wanted to conform its standard to the minimal constitutional requirements, it could have done so; however, in adopting a good cause standard, it suggested the possibility of criteria in addition to voluntariness. Involuntariness and discovery of  new exculpatory evidence constitute good causes for withdrawal of a plea under § 46-16-105(2), MCA (2001), but others may exist. *See, e.g., United States v. Turner*

9

(9th Cir. 1990), 898 F.2d 705, 713 (determining that, under Fed.R.Crim.P. 32(e), "fair and just" reasons for withdrawal of guilty pleas include an inadequate colloquy, "'newly discovered evidence, intervening circumstances or any other reason for withdrawing his guilty plea that did not exist when he pleaded guilty.'") (quoting *United States v. Rios-Ortiz* (9th Cir. 1987), 830 F.2d 1067, 1069).

### B. Voluntariness Standard

¶20　While this Court's interpretation of the Montana Constitution need not march lock-step with the United States Supreme Court's interpretation of the United States Constitution, this Court has a coordinate responsibility to guarantee the rights enshrined in the United States Constitution. This Court cannot adopt a lower standard to protect any right in the United States Constitution than the United States Supreme Court has recognized. U.S. Const. art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . .").

¶21　The United States Supreme Court considers a defendant's plea voluntary only when the defendant is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . ." *Brady v. United States* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (quoting *Shelton v. United States* (5th Cir. 1957), 246 F.2d 571, 572 n.2 (en banc), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)) (quotations omitted). If the court, the prosecutor, his own counsel, or some other party, induced the plea, however slightly, by threats or promises; misrepresentation, including unfulfilled or unfulfillable promises; or

10

"promises . . . having no proper relationship to the prosecutor's business (e.g. bribes)," that evidence indicates involuntariness. *Brady*, 397 U.S. at 753, 755, 90 S.Ct. at 1471-72, 25 L.Ed.2d at 759-60 (quoting *Shelton*, 246 F.2d at 572 n.2) (quotations omitted). Further, the defendant must be mentally competent to enter a plea and any medication he is taking must not make him mentally incompetent to plead. *See, e.g., Godinez v. Moran* (1993), 509 U.S. 389, 394 n.3, 396 n.6, 398-99, 113 S.Ct. 2680, 2684 n.3, 2685 n.6, 2686, 125 L.Ed.2d 321, 329 n.3, 330 n.6, 331-32 (equating the mental competency for entering a voluntary plea with the mental competency for standing trial, but recognizing that some state courts have held that different standards apply); *Godinez,* 509 U.S. at 410-12, 416-17, 113 S.Ct. at 2692-93, 2695-96, 125 L.Ed.2d at 339-40, 343-44 (Blackmun, J., dissenting) (recognizing that medication can affect one's mental competence and disagreeing with the majority both on the standard and whether the medication made Moran mentally incompetent).

¶22    We have held "a plea of guilty will be deemed involuntary where it appears that the defendant was laboring under such a *strong inducement, fundamental mistake, or serious mental condition* that the possibility exists he may have pled guilty to a crime of which he is innocent." *Miller*, 248 Mont. at 197, 810 P.2d at 310. Requiring a strong inducement before allowing a defendant to withdraw his plea is less protective of individual rights than requiring any inducement, however slight, as a sufficient basis for withdrawal of a plea. Since the *Miller* standard is less protective of individual rights than the federal standard, we overrule it and enforce the aforementioned federal standard for voluntariness.

¶23 Although two of the criteria from the *Huttinger* test (the adequacy of colloquy and the existence of plea bargain) bear on the question of voluntariness, numerous other case-specific considerations may also bear on that question. Because the voluntariness test subsumes the relevant elements of the *Huttinger* test, we relegate that test to history.

## II. The Effect of Fear on a Guilty Plea

¶24 Lone Elk argues that he pleaded guilty unknowingly and involuntarily because he was unduly influenced by hope and fear. Lone Elk cites *State ex rel. Gladue v. Eighth Judicial Dist.* (1978), 175 Mont. 509, 575 P.2d 65, for the proposition that a showing that a guilty plea was induced by fear of losing at trial was sufficient to require the district court to allow the defendant to withdraw his plea. Specifically, he argues that he pleaded guilty to a charge of burglary because he feared that, if he went to trial and was convicted of sexual intercourse without consent, the court would require him to complete sex offender treatment.

¶25 In *Gladue*, we allowed Gladue to withdraw his guilty plea when the evidence showed

> that [he] had always maintained his innocence and plead guilty only after being induced to do so by his attorney of record. Petitioner feared he had no chance of proving his innocence in a jury trial. This raises serious questions about his guilty plea and whether that plea was voluntarily given.

*Gladue*, 175 Mont. at 512, 575 P.2d at 67. Gladue's only fear was losing at trial. Despite our holding in *Gladue*, a defendant's belief in his innocence or his fear of going to trial do not preclude him from making a voluntary and intelligent choice between possible alternative courses of action. *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; *accord State v. Allen* (1994), 265 Mont. 293, 294, 296, 876 P.2d 639, 639, 641. Fear

12

of the legal consequences of one's actions lies central to the criminal law purpose of deterrence. If an individual did not fear the legal consequences of his action, he may have no reservations about engaging in criminal conduct. This is not improperly-induced fear. To the extent that *Gladue* allows a defendant to withdraw his *Alford* plea merely because he fears the consequences of going to trial, we implictly overruled it by implication in *Allen*.

¶26 "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473, 25 L.Ed.2d at 761. If Lone Elk was truly afraid of the sexual offender treatment, he could have pleaded not guilty and taken the case to trial. If he was acquitted, he, of course, would not be subject to any punishment or sex offender treatment programs. If he was convicted, he would likely have to undergo sexual offender treatment and his sentence could be a maximum punishment of 100 years in prison. Section 45-5-503(2), MCA (2001).

¶27 Pleading guilty to the burglary charge limited his risk to a maximum penalty of twenty years, but it involved a risk of sex offender treatment. Section 45-6-204(3), MCA (2001). The District Court specifically told Lone Elk that his sentence for burglary could require sexual offender treatment. As Lone Elk admitted in court, he understood the repercussions of his decision, and he understood the risks. Simply because the results failed to turn out as he expected or desired, the District Court need not allow him to withdraw his guilty plea.

13

### III. The Effect of Medication on Guilty Pleas

¶28 Lone Elk claims he was not stabilized on his anti-depressant medication at the time he entered his guilty plea and, therefore, his plea was unknowing, unintelligent, and involuntary. We agree with the First Circuit that "medication can in some circumstances affect a defendant's mental state to a degree that undermines the defendant's ability to enter a voluntary plea." *United States v. Savinon-Acosta* (1st Cir. 2000), 232 F.3d 265, 268. However, George Sheckelton, M.D., testified that lack of concentration is not a side-effect of Zoloft, and Lone Elk asserts no other side-effects that could affect his voluntariness. Irrespective of whether Lone Elk was stabilized in his medication, there is no evidence in the record that Zoloft could have affected his ability to make a voluntary plea.

¶29 We affirm.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE

14