No. 04-877

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 17N

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

KERRY REX MIESSNER,

        Defendant and Appellant.


APPEAL FROM:    The District Court of the Twenty-First Judicial District,
                  In and For the County of Ravalli, Cause No. DC 2002-172,
                  Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Kerry R. Miessner, *Pro Se*, Great Falls, Montana

    For Respondent:

        No brief filed.

Submitted on Briefs:  November 9, 2005

Decided:  January 24, 2006

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1	Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2	Kerry Miessner (Miessner) appeals from his convictions for kidnapping, two misdemeanor counts of partner or family member assault and driving with an alcohol concentration in excess of 0.10 (DUI *per se*), also a misdemeanor. Pursuant to a plea agreement, Miessner pled guilty to all charges. He was sentenced to ten years imprisonment for kidnapping, a total of 323 days imprisonment for the three misdemeanors and his sentence was increased by five years, all of which were suspended, for being a persistent felony offender. Miessner now contends that he was improperly coerced into pleading guilty by threats issued by his attorney and the prosecution. Moreover, he contends that the District Court should never have accepted his guilty plea to the charge of DUI *per se* because he was never arraigned on that charge. He also asserts that the District Court erred when it denied his motion to withdraw his guilty plea. Finally, Miessner challenges the District Court's statutory and constitutional authority to impose an increased sentence for his being a persistent felony offender.

¶3	On November 16, 2002, police officer Lance Foster (Foster) went to Miessner's home because Miessner's illegally parked vehicle was blocking access to the Stevensville Fire

Department. After Miessner answered the door, his girlfriend Jolene Stieffel (Jolene) cried out and made her way to the door. Foster observed that her hands were duct taped together and she was in an "emotional state." Jolene eventually accompanied Foster to the Police Department where she indicated that Miessner had held her down and duct taped her hands, feet and mouth. At that time, she refused to give a formal written statement. Officer Foster concluded that he lacked sufficient probable cause to arrest Miessner at that time, due, in part, to Jolene's refusal to provide a formal statement.

¶4 On November 20, 2002, Miessner, accompanied by friends, arrived home to find the doors to his residence locked. Angered by this, he kicked in the back door and threatened to harm Jolene. According to Jolene, his friends had to forcefully restrain him from physically assaulting her. Jolene subsequently gave a formal statement to the police regarding both of the above incidents, stating that Miessner had struck her in the jaw, knocking her to the floor, before he bound her with duct tape.

¶5 On November 21, 2002, police responded to a call regarding a strange vehicle in a private driveway and found Miessner asleep in the cab of his truck. Miessner was arrested for a probation violation and after being read his *Miranda* rights, he told the police that he had bound Jolene's hands and mouth with duct tape on November 16, 2002, and had kicked open the door to his residence on November 20, 2002. Miessner was also administered a breath test, which yielded a blood alcohol content of 0.153.

¶6 On November 26, 2002, the State, through the Ravalli County Attorney, requested leave of the court to file an information charging Miessner with aggravated kidnapping and

3

two counts of partner or family member assault. Judge Langton found that probable cause existed to believe that Miessner committed the offenses and granted leave for the State to file the information charging Miessner. Shortly thereafter, the State filed a notice to have Miessner designated as a persistent felony offender. On April 18, 2003, the State filed an amended information that added the charge of DUI *per se* to the charges already pending against Miessner. Because he was being held at the Montana State Prison, Miessner was not arraigned on the DUI *per se* charge.

¶7 On May 9, 2003, just a few days before his scheduled trial date, Miessner attended a change of plea hearing where, pursuant to a plea agreement, he pled guilty to kidnapping, two counts of partner or family member assault and DUI *per se*. Under the terms of that agreement, the charge of aggravated kidnapping was reduced to kidnapping. In addition, the State agreed to request that the sentences for the three misdemeanor charges run concurrently with the kidnapping sentence and that Miessner receive only the statutory minimum of five years as a persistent felony offender, to run consecutive with his kidnapping sentence. Miessner signed an Acknowledgment of Waiver of Rights and indicated at the hearing that he had fully understood that document. During the hearing, Miessner was informed of and acknowledged that he understood the maximum penalties he faced for each of the charges as well as the minimum and maximum sentence enhancement possible for a designated persistent felony offender. Miessner also acknowledged that he was giving up a variety of constitutional rights by entering a guilty plea. Miessner indicated that he had not been forced, pressured or threatened into pleading guilty and he expressed satisfaction with the

4

assistance provided by his counsel. Finally, Miessner briefly described his commission of the offenses charged.

¶8 The next day Miessner sent a letter to Judge Langton, seeking appointment of alternate counsel and requesting that his guilty plea be withdrawn. Miessner indicated that he was under extreme duress when he changed his plea, that he had never been arraigned on the DUI *per se* charge and that his attorney had contributed to his duress by not using Officer Foster's initial report to argue that the State lacked probable cause to arrest him and by relaying threats made by the prosecutor that Miessner would get "hammered" as a persistent felony offender. Judge Langton ultimately granted Miessner's request for alternate appointed counsel but did not rule on his request to withdraw his guilty plea. Nevertheless, Miessner, with the assistance of his second appointed counsel, ultimately filed a proper motion to withdraw his guilty plea. Miessner contended that he should be permitted to change his plea pursuant to § 46-16-105(2), MCA, and that he did not knowingly plead guilty because he had not been arraigned on, nor was he aware of, the charge of DUI *per se*. After a hearing, this motion was denied by the District Court.

¶9 On March 15, 2004, the District Court sentenced Miessner to ten years for kidnapping with an additional enhancement of five years, with all five years suspended, for being a persistent felony offender. For the misdemeanor charges, Miessner was sentenced to a total of 323 days and was given credit for 323 days served. This *pro se* appeal followed.

¶10 Miessner raises a litany of issues on appeal, which he categorizes as twenty-one separate "grounds" of appeal (identified by letters "A" through "U"). Because Miessner pled

guilty, however, many of the "grounds" of appeal that he identifies may not be raised on appeal. "A voluntary and intelligent guilty plea constitutes a waiver of nonjurisdictional defects and defenses" that occurred prior to the plea. *State v. Gordon*, 1999 MT 169, ¶ 23, 295 Mont. 183, ¶ 23, 983 P.2d 377, ¶ 23 (citation omitted); *see also Hagan v. State* (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387. Thus, Miessner may only challenge the knowing, voluntary and intelligent character of his guilty plea, the District Court's denial of his motion to withdraw his guilty plea for good cause and jurisdictional defects. In this context, jurisdictional claims are "'those cases in which the district court could determine that the government lacked the power to bring the indictment *at the time of accepting the guilty plea from the face of the indictment or from the record.*'" *Hagan*, 265 Mont. at 36, 873 P.2d at 1388 (quoting *United States v. Cortez* (9th Cir. 1992), 973 F.2d 764, 767) (emphasis in original). Miessner may also challenge the legality of his sentence.

¶11 Before addressing the merits of Miessner's claims, we first must make clear that we are not addressing several of his "grounds" of appeal. Although Miessner couches each of his "grounds" of appeal in terms of the District Court's lack of subject matter jurisdiction, they do not properly touch on the jurisdiction of the court or the power of the State to file the information. Accordingly, we will not address "grounds": B (challenging Miessner's warrantless arrest for aggravated kidnapping and partner or family member assault); C (alleging that the District Court improperly permitted Miessner's prosecution to proceed without obtaining leave of the Justice Court to do so); E (alleging that the State lacked

6

probable cause[1] to file its information and failed to obtain leave of the court to do so); F (alleging that the District Court was stripped of subject matter jurisdiction when a court-ordered conference to explore plea alternatives was not held); G (alleging that the District Court improperly denied Miessner's initial request for substitute appointed counsel); H (alleging that the District Court improperly arraigned Miessner on charges that were not supported by probable cause); and I (alleging that the State improperly sought persistent felony offender status). In addition, several of Miessner's claims stem from his probation revocation—a different matter altogether from the conviction he is presently appealing—and are not properly before this Court. Accordingly, we will not address "grounds": A (alleging that he was charged solely to facilitate his arrest for a probation violation); B (alleging that he was deprived of his statutory right to an intervention hearing within seventy-two hours of his arrest, pursuant to § 46-23-1012(3)(b), MCA); K (alleging that the State improperly filed a petition to revoke his suspended sentence); L (alleging improprieties during his probation violation hearing); and M (alleging that the District Court improperly ordered Miessner to serve the remainder of his suspended sentence at the Montana State Prison). Finally, many of Miessner's "grounds" of appeal are flatly contradicted by facts of record. Because they lack any factual basis in the record, we will not address the following "grounds" of appeal: D (alleging that the District Court erred in proceeding without subject matter jurisdiction,

---

[1]Miessner's brief is riddled with assertions that the State and District Court lacked probable cause to proceed against him. This belief is based on assessments contained in a report prepared by Officer Foster at a time when Jolene had refused to make a formal statement against Miessner. Jolene's subsequent formal statement implicating Miessner and

statutory authority or a finding of probable cause; however, the District Court, when it granted the State's motion for leave to file an information, specifically found that there was probable cause to believe that Miessner committed the offenses charged and district courts clearly have subject matter jurisdiction over felony charges and concurrent jurisdiction over all misdemeanor charges faced by Miessner, which each carry fines up to $1,000, *see* § 3-10-303(1)(c), MCA; *State v. Brockway*, 2005 MT 179, ¶ 11, 328 Mont. 5, ¶ 11, 116 P.3d 788, ¶ 11); E (see above; the State did obtain leave of the court to file the information and its motion was supported by an affidavit that established probable cause); H (see above; information was properly filed and the District Court acted within its jurisdiction and pursuant to statutory authority when it arraigned Miessner); and J (alleging that the District Court failed to make its finding of probable cause part of the record; however, the court specifically did so when it granted the State's motion for leave to file an information). The remainder of Miessner's "grounds" of appeal are properly before this Court and we will address their merits.

¶12 We reframe the issues properly before this Court as follows: (1) whether the District Court erred in accepting Miessner's guilty plea to DUI *per se* because he was never arraigned on that charge; (2) whether Miessner was improperly coerced into pleading guilty because of the conduct of either his attorney or the State; (3) whether the District Court erred in denying Miessner's motion to withdraw his guilty plea; (4) whether Miessner's rights were violated when he was sentenced as a persistent felony offender; and (5) whether the District Court

providing greater detail of the incident of November 16, 2002, makes the continuing

erred when it neglected to consider whether the statutory exceptions to mandatory minimum sentences applied to Miessner. These issues are identified in Miessner's brief as "grounds" of appeal "N" through "U." We address each in turn.

¶13    Miessner asserts that the District Court erred in accepting his guilty plea to the charge of DUI *per se* because he was never arraigned on that charge and the District Court improperly allowed the State to file an amended information charging him with DUI *per se*; thus, he asserts, he was denied due process and the District Court lacked subject matter jurisdiction to proceed against him, let alone accept his guilty plea to that charge.[2]  Miessner cites four cases in support of his argument—*State v. McCaffery* (1895), 16 Mont. 33, 40 P. 63; *State v. Dist. Court of Third Judicial Dist. for Deer Lodge County* (1907), 35 Mont. 321, 89 P. 63; *Vande Veegaete v. Vande Veegaete* (1927), 79 Mont. 68, 255 P. 348; and *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527—none of which establishes that a district court lacks subject matter jurisdiction over a charge on which a defendant has not been arraigned. If anything, *McCaffery* stands for the proposition that any procedural inadequacies in the filing of an information are *waived* by a defendant who pleads guilty without first objecting to those procedural shortcomings. *McCaffery*, 16 Mont. at 37, 40 P. at 65. While it is settled that a defendant must be arraigned anew on new charges contained in an amended information, this requirement is grounded in our concern with protecting the due process rights of defendants, rather than delineating courts' jurisdiction. *State v. Cardwell*

accuracy of Officer Foster's initial assessment of probable cause doubtful, at best.

[2]The State did not file a brief in this appeal and has taken no position on any of the issues presented.

(1980), 187 Mont. 370, 375-76, 609 P.2d 1230, 1233 (indicating that the requirement of arraignment ensures that the defendant receives a neutral determination of probable cause for detention and notice of the offense charged so that he or she can prepare a defense); *see also* § 46-12-102, MCA (declaring that the defendant must be arraigned in the court that has trial jurisdiction over the charge and hence implying that the court's jurisdiction over the case precedes arraignment and is unaffected thereby). Miessner has waived his right to contest any violation of his due process rights that occurred prior to his guilty plea. *Gordon*, ¶ 23. Because Miessner has failed to cite authority sufficient to support his claim that the District Court lacked subject matter jurisdiction to proceed against him, we find no error in the District Court's acceptance of his guilty plea to the charge of DUI *per se*.

¶14    Next Miessner asserts that he was improperly coerced into pleading guilty because of the conduct of his attorney and the conduct of the Ravalli County Attorney. Relying on *State ex rel. Gladue v. Eighth Judicial Dist.* (1978), 175 Mont. 509, 575 P.2d 65, *implicitly overruled by State v. Allen* (1994), 265 Mont. 293, 294, 296, 876 P.2d 639, 639, 641, *as recognized by State v. Lone Elk*, 2005 MT 56, ¶ 25, 326 Mont. 214, ¶ 25, 108 P.3d 500, ¶ 25, Miessner argues that his attorney improperly induced him to plead guilty. Miessner contends that a letter written by his attorney "strongly urg[ing]" him to accept the State's plea offer "or some better offer," constitutes coercion that renders his guilty plea involuntary. In this letter, his attorney notes that the State has offered to reduce the felony charge from aggravated kidnapping (which carries a maximum sentence of life imprisonment) to kidnapping (which carries a maximum sentence of ten years) and agreed to recommend only five years for being

10

a persistent felony offender (which permits a sentence to be extended to one hundred years). In addition, his attorney offered his candid, albeit bleak, assessment of Miessner's prospects of succeeding at trial: "[t]he simple facts of this case . . . and the testimony of the officers involved . . . all point overwhelmingly that you will be convicted of aggravated kidnapping in my opinion." Miessner's attorney made no suggestion that he would not vigorously defend Miessner at trial; rather, he offered his candid assessment of the likely result of a trial. Such an honest appraisal of the probable outcome if his case proceeded to trial, presentation of the possible sentences he could face under different scenarios, and a professionally informed recommendation that he reconsider his earlier rejection of the State's plea bargain is precisely the sort of advice that a defendant should hope to receive from his attorney in order to make an informed and voluntary decision concerning a plea bargain. Miessner essentially argues that he was induced to plead guilty due to his fear of being found guilty of the charges he faced. We have held, however, that "[f]ear of the legal consequences of one's actions . . . is not improperly-induced fear." *Elk*, ¶ 25. Moreover, Miessner's contention that he was coerced by his attorney into involuntarily pleading guilty is contradicted by Miessner's conduct at the change of plea hearing. When asked by Judge Langton whether anyone had forced, pressured, or threatened him "in any fashion to enter into this agreement or to plead guilty," Miessner replied in the negative. Miessner specifically indicated that he was satisfied with "the advice and services" provided by his attorney, belying his present claim that his attorney's advice improperly induced his plea. Finally, Miessner signed an Acknowledgment of Waiver of Rights indicating that his plea was "voluntary and not the

11

result of any pressure or threats."  Accordingly, we find that Miessner was not improperly induced by his attorney into entering a guilty plea.

¶15    Miessner also contends that the Ravalli County Attorney induced his plea by "threatening" Miessner with the prospect of life imprisonment in the amended information that charged him with aggravated kidnapping.  The crime of aggravated kidnapping is punishable by life imprisonment or between two and one hundred years imprisonment unless the culprit voluntarily released the victim.[3]  Section 45-5-303(2), MCA.  The Supreme Court declared in *Brady v. United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, that:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 760 (citation omitted).  Under *Brady*, a defendant's guilty plea is not invalidated simply because he faces the prospect of a more severe sentence if he does not plead guilty.  *State v. Johnson* (1995), 274 Mont. 124, 129, 907 P.2d 150, 153; *State v. Milinovich* (1994), 269 Mont. 68, 71, 887 P.2d 214, 216.  A life sentence is statutorily authorized for aggravated kidnapping.  The inclusion of a statutorily authorized sentence in the charging information is not an improper threat or inducement that

---

[3]Although Miessner apparently did release Jolene by cutting the duct tape that bound her feet, he did so only after a police officer had arrived at his door.  A reasonable jury could conclude that Miessner did not voluntarily release Jolene.

invalidates a guilty plea. Accordingly, Miessner was not improperly coerced by the Ravalli County Attorney into entering his guilty plea.

¶16 Miessner contends that the District Court erred when it denied his motion to withdraw his guilty plea. In reviewing denial of a motion to withdraw a guilty plea, we review a district court's underlying factual findings to determine if they are clearly erroneous. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, ¶ 23, 114 P.3d 254, ¶ 23. We then review the ultimate question of voluntariness of the plea *de novo*. *Warclub*, ¶ 23. Miessner argues that the court improperly neglected to address his first handwritten "motion"[4] to withdraw his guilty plea, which purportedly informed the court that the State lacked probable cause to arrest Miessner in the first place. Miessner also argues that the District Court, having been informed by his first "motion" of the lack of probable cause to initiate his prosecution, erred when it denied his second motion to withdraw his guilty plea. "Under *Brady*, we will not overturn a district court's denial of a motion to withdraw a guilty plea if the defendant was aware of the direct consequences of such a plea, and if his plea was not induced by threats, misrepresentation, or an improper promise such as a bribe." *Warclub*, ¶ 32. Bases other than involuntariness may provide "good cause" for withdrawing a guilty plea under § 46-16-105(2), MCA. *Lone Elk*, ¶ 19. An arrest without probable cause is not among the alternate

---

[4]This "motion" was actually a letter to Judge Langton in which Miessner requested appointment of new counsel, dismissal of all charges if the DUI *per se* charge was unlawfully entered into the plea agreement and withdrawal of his guilty plea.

13

bases that may constitute good cause, however. *See State v. Sor-Lokken* (1991), 247 Mont. 343, 348, 805 P.2d 1367, 1370-71 ("an illegal arrest of a defendant neither precludes the State from proceeding on a criminal charge against him nor presents the defendant with a defense to a valid conviction"). Miessner, having signed an Acknowledgment of Waiver of Rights and a plea agreement, and having engaged in a colloquy with Judge Langton, was triply aware of the direct consequences of his plea. His plea was not improperly induced by threats, but was entered voluntarily. Accordingly, we conclude that the District Court did not err in denying Miessner's motion to withdraw his guilty plea.

¶17    Miessner alleges that the District Court erred when it sentenced him to five years for being a persistent felony offender because he was never separately charged with the offense of being a persistent felony offender. Additionally, he claims that his Sixth Amendment right to a trial by jury was violated because he was not afforded a trial on the charge of being a persistent felony offender. We review a sentence only for legality. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. Miessner fundamentally miscomprehends the nature of a persistent felony offender designation. As we recently observed, "[i]t is not a crime to be a persistent felony offender"; rather, "the penalties for all felonies, across the board, increase for a persistent felony offender." *State v. Wardell*, 2005 MT 252, ¶ 25, 329 Mont. 9, ¶ 25, 122 P.3d 443, ¶ 25. Accordingly, it is of no consequence that Miessner was not separately charged with the offense of being a persistent felony offender. The State properly provided notice of its intent to seek persistent felony offender status, and upon pleading guilty to the felony of kidnapping, Miessner waived his claim to a

14

jury determination of his status. Miessner's sentence is within the one hundred year maximum authorized by § 46-18-502, MCA, and was legally imposed.

¶18 Finally, Miessner argues that the District Court erred when it failed to hold a hearing to determine whether the statutory exceptions to mandatory minimum sentences, § 46-18-222, MCA, apply to Miessner. Miessner also suggests that the District Court lacked authority to impose thirty-one conditions in connection with his suspended sentence. We have held that "when a sentence greater than the mandatory minimum is imposed, the statutory exceptions have no bearing." *State v. Zabawa* (1996), 279 Mont. 307, 317, 928 P.2d 151, 157. Miessner received a ten-year sentence, the statutory maximum sentence allowed for kidnapping. Therefore, the statutory exceptions to the mandatory minimums have no bearing on his sentence and the District Court did not err when it neglected to consider them. As to the conditions attached to Miessner's suspended sentence, the plea agreement specifically states that "the Defendant understands that he may be subject to the conditions of probation imposed by . . . this Court." The imposition of reasonable restrictions on an offender who receives a suspended sentence is authorized by statute. Section 46-18-201(4), MCA. Accordingly the District Court properly exercised its discretion in imposing the thirty-one conditions on the suspended portion of Miessner's sentence.

¶19 In conclusion, Miessner has received the benefit of his bargain with the State: by pleading guilty to kidnapping he avoided trial on the charge of aggravated kidnapping and received the minimum sentence for a persistent felony offender, all of which was suspended. Nobody coerced Miessner into pleading guilty. Rather, Miessner voluntarily entered a

15

guilty plea fully cognizant of both the consequences that would ensue and of the potential consequences avoided thereby. The District Court's failure to arraign Miessner on the DUI *per se* charge has not been shown to constitute a jurisdictional defect and Miessner has waived his right to assert a due process violation. The District Court properly denied Miessner's motion to withdraw his guilty plea. Finally, Miessner's sentence is statutorily authorized and was properly imposed.

¶20    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE