
DA 09-0209

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 154

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　　v.

DANIEL ANDREWS, JR.,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 07-181
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant
Appellate Defender (argued), Helena, Montana

　　　　For Appellee:

　　　　　　Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General (argued), Helena, Montana

　　　　　　Mitch Young, Lake County Attorney, Polson, Montana

　　　　　　　　Argued:　December 9, 2009
　　　　　　　Submitted:　December 22, 2009
　　　　　　　　Decided:　July 14, 2010

Filed:

　　　　_____
　　　　　　　　　　　　Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Andrews appeals from the District Court's order denying his motion to withdraw his Alford plea to a charge of felony criminal possession of dangerous drugs with intent to distribute. We affirm.

¶2 The issue on appeal is whether the District Court properly denied Andrews' motion to withdraw his plea.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In March, 2007, agents working with the Northwest Drug Task Force investigated several individuals suspected of selling drugs, using an informant who made drug purchases as part of the investigation. On March 11 Judy Harlow contacted the informant to report that she had drugs to sell. The informant called Harlow who told him to go to her residence and speak to Andrews, who would make the sale.

¶4 The informant went to Harlow's residence, met Andrews, and gave him money to purchase methamphetamine. Andrews left with a woman named Sonya Bullcalf and returned 20 minutes later. The informant left Harlow's residence and reported to the Task Force agent, giving him a bag of powder he had obtained from Andrews. The informant reported that Andrews gave him the powder, that he gave the money to Andrews, and that Andrews gave the money to Bullcalf. Task Force agents monitored and recorded the informant's conversations with Andrews through a hidden transmitter worn by the informant. The agents did not have a search warrant authorizing the electronic surveillance.

2

¶5 Agents returned to Harlow's residence with a search warrant. They found methamphetamine in Harlow's purse and a spoon with oxycodone residue in a desk in Andrews' room. Andrews admitted to using methadone and admitted that the spoon belonged to him.

¶6 On October 2, 2007, the State charged Andrews with one count of criminal distribution of dangerous drugs and one count of criminal possession of dangerous drugs. On July 3, 2008, Andrews entered into an Acknowledgement of Rights and Plea Agreement in which he agreed to enter an Alford plea to one count of felony criminal possession with intent to distribute and the State agreed to dismiss the possession charge. Andrews agreed that the facts contained in the affidavit in support of the motion for leave to file the information established a factual basis to support the plea. Andrews and the State agreed to jointly recommend that he be committed to the Department of Corrections for seven years, with five years suspended to be served on conditions proposed in the presentence investigation report.

¶7 The plea agreement acknowledged that Andrews had the opportunity to examine the charges against him along with the investigative file, that he consulted with his attorney and that he was advised of and understood his rights. In the agreement Andrews acknowledged and waived his right to object to and to move to suppress "any evidence that may have been obtained in violation of the law or constitution." Finally, Andrews stated in the agreement that his plea was voluntary and that he fully understood the terms and conditions.

¶8 The District Court held a hearing on Andrews' plea, reviewing the rights that he was waiving by entering the plea. Andrews testified that he had reviewed the evidence against him with his attorney, including the audio recordings, police report and the allegations of the information and affidavit in support. Andrews testified that he believed it was in his best interest to enter the plea, and that he was certain that the State had enough evidence to prove his guilt beyond a reasonable doubt. The District Court found that Andrews was acting under the advice of competent counsel, that he understood his rights, that he understood the charges and possible punishments, and that he was not acting under any defect or disability. The District Court accepted the plea and found Andrews guilty of the amended charge. Andrews concedes that he entered the plea agreement voluntarily.

¶9 On August 20, 2008, after Andrews was adjudged guilty but before he was sentenced, this Court announced its decision in *State v. Goetz*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489. *Goetz* held that electronic monitoring and recording of a defendant's conversations in his home with an informant constitute a search subject to the warrant requirement of the Montana Constitution, despite consent of the informant. On October 21, 2008 Andrews moved to withdraw his plea because the *Goetz* case cast doubt on whether the results of the electronic monitoring could have been used against him.

¶10 The District Court held a hearing on Andrews' motion to withdraw his plea. Both the prosecution and the defense agreed that there was no need for the District Court to receive any evidence to decide the motion. Andrews argued that if *Goetz* had been decided before his plea he could have successfully suppressed the results of the electronic

4

monitoring, would not have entered the plea agreement, and would have proceeded to trial. The District Court denied Andrews' motion, concluding that he had received the benefits of the plea agreement and that even if *Goetz* required suppression of the electronic monitoring the State still had sufficient evidence to convict.

## STANDARD OF REVIEW

¶11 The court may permit a defendant to withdraw a plea to a criminal charge upon a showing of "good cause." Section 46-16-105(2), MCA; *State v. Wise*, 2009 MT 32, ¶ 9, 349 Mont. 187, 203 P.3d 741. Good cause for withdrawing a plea can be found in reasons other than voluntariness of the plea. *Wise*, ¶ 9. This Court reviews de novo a defendant's motion to withdraw a guilty plea. *State v. Usrey*, 2009 MT 227, ¶ 12, 351 Mont. 341, 212 P.3d 279.

## DISCUSSION

¶12 A voluntary plea is made in light of the law applicable at the time the plea is accepted by the court and does not become vulnerable because of a later judicial decision that changes the law. In *Brady v. U.S.*, 397 U.S. 742, 90 S. Ct. 1463 (1970), the defendant pled to a kidnapping charge that exposed him to the death penalty, but only if he were convicted by a jury. Years after Brady was convicted and sentenced the Supreme Court invalidated the procedure that allowed a jury but not a judge to impose the death penalty. Brady attacked the validity of his plea based upon the change in the law. The Supreme Court held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial

5

decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. at 757, 90 S. Ct. at 1473. The Supreme Court further explained:

> The fact that Brady did not anticipate [a change in the law] does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admission in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady*, 397 U.S. at 757, 90 S. Ct. at 1473-74. A defendant who waives his state court remedies and enters a plea to the charges against him "does so under the law then existing." *McMann v. Richardson*, 397 U.S. 759, 774, 90 S. Ct. 1441, 1450 (1970). A favorable change in the law does not entitle a defendant to withdraw a knowing and voluntary plea. *U.S. v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005); *U.S. v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995). Later developments in the law that expand a right a defendant has waived in a plea agreement does not "make the plea involuntary or unknowing or otherwise undo its binding nature." *U.S. v. Quinlan*, 473 F.3d 273, 279 (6th Cir. 2007).

¶13 While some courts have allowed withdrawal of a plea when a subsequent change in the law were such that the conduct was no longer a crime, *see U.S. v. Andrade*, 83 F.3d 729, 731 (5th Cir. 1996), the *Goetz* case did not de-criminalize Andrews' conduct. Moreover, as the District Court stated at the plea withdrawal hearing, even if *Goetz* required suppression of the electronic monitoring recordings, the State still had evidence

6

available to convict. The informant and investigating officers could still testify and make a case against Andrews.

¶14 Other states follow the rule of the *Brady* case and hold that a post-plea change in the law does not invalidate the plea. *People v. Trank*, 872 N.Y.S.2d 595, 596-97 (N.Y. App. 2009); *State v. Brazer*, 751 N.W.2d 619, 630 (Neb. 2008); *Sims v. Commonwealth*, 233 S.W.3d 731, 733 (Ky. App. 2007); and *State v. Reid*, 894 A.2d 963, 978-79 (Conn. 2006).

¶15 Having entered his plea agreement knowingly and voluntarily, Andrews failed to make a showing of good cause to allow him to withdraw the plea as required by § 46-16-105(2), MCA, based upon the subsequent decision in the *Goetz* case. The District Court properly denied Andrews' motion to withdraw his plea.

¶16 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/KATHY SEELEY
The Honorable Kathy Seeley, District Court
Judge, sitting for retired Justice John Warner

7

Justice W. William Leaphart, dissenting.

¶17 I dissent. Section 46-16-105(2), MCA, provides that a court may, for good cause shown, permit the plea of guilty to be withdrawn. An involuntary plea can constitute "good cause" to withdraw the plea. *State v. Wise*, 2009 MT 32, ¶ 9, 349 Mont. 187, 203 P.3d 741 (citing *State v. Lone Elk*, 2005 MT 56, ¶¶ 17-19, 326 Mont. 214, 108 P.3d 500, *overruled on other grounds*, *State v. Brinson*, 2009 MT 200, 351 Mont. 136, 210 P.3d 164). However, "good cause" can be found in reasons other than involuntariness. *Id.*; *State v. Jones*, 2008 MT 331, ¶ 11, 346 Mont. 173, 177, 194 P.3d 86, 89; *State v. Warclub*, 2005 MT 149, ¶ 16, 327 Mont. 352, 356, 114 P.3d 254, 257. In *State v. Lone Elk*, we observed that the legislature, in adopting a broad good cause standard, "suggested the possibility of criteria in addition to voluntariness." *Lone Elk*, ¶ 19. We therefore held that other reasons may exist. *Lone Elk*, ¶ 19. We included examples such as "newly discovered evidence, intervening circumstances or any other reason for withdrawing his guilty plea that did not exist when he pleaded guilty." *Lone Elk*, ¶ 19 (quoting *United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990)). Andrews's appeal is just such a situation in which we should officially recognize the latter two. There still may be others, but I would confine our analysis to only those circumstances applicable to Andrews's appeal.

¶18 Our invocation of *United States v. Turner* and the "fair and just" standard in *Lone Elk* provides the appropriate framework for identifying "good cause" circumstances

8

justifying the withdrawal of a guilty plea.[1]  In *Turner*, codefendant Smith alleged that the district court erred at sentencing by denying his motion to withdraw his guilty plea.  The court held that Smith did not "allege newly discovered evidence, intervening circumstances or any other reason for withdrawing his guilty plea that did not exist when he pleaded guilty.  *United States v. Turner*, 898 F.2d at 713.  Instead, when making his withdrawal request, Smith merely stated: "I feel that I am being blamed for a lot of stuff I didn't do."  *United States v. Turner*, 898 F.2d at 713.

¶19     Andrews's argument regarding the intervening *Goetz* decision constitutes a "reason for withdrawing his guilty plea that did not exist when he pleaded guilty" as well as an "intervening circumstance."  The *Goetz* decision did not exist prior to August 20, 2008.  Since Andrews entered an *Alford* plea on July 3, 2008, the *Goetz* decision "did not exist" at the time of his plea.  Andrews's argument also falls within the "intervening circumstances" category of "good cause" justifications for withdrawing a guilty plea.  In *United States v. Ortega-Ascanio*, 376 F.3d 879, 887 (9th Cir. 2008), the Ninth Circuit held that a district court abused its discretion in denying a pre-sentencing motion to withdraw a plea where there existed "a fair and just reason for withdrawing his plea, namely, an *intervening Supreme Court decision* that overruled Circuit precedent and gave him a plausible ground for dismissal of his indictment" (emphasis added).[2]  Similarly,

---

[1] While not identically-worded, the "fair and just" language is the federal equivalent of Montana's "good cause" language.  This state-federal mirroring is why in *Lone Elk* we invoked the Ninth Circuit's list of other circumstances that may justify the withdrawal of a guilty plea.

[2] The Court has cited other Ninth Circuit decisions that are tangentially related to the specific scenario in *Andrews*.  *Ortega-Ascanio* is directly on point with Andrews's argument regarding an intervening higher court decision.  None of the decisions cited by the Court address this specific scenario.  Further, the decisions the Court cites are from 1995 and 2005, while *Ortega-Ascanio* was decided in 2008.

before Andrews's sentencing, the Montana Supreme Court decided *Goetz*, which overruled prior precedent in *State v. Brown*, 232 Mont. 1, 755 P.2d 1364 (1988). As a result of that intervening decision, Andrews moved to withdraw his plea, arguing that if *Goetz* had been decided before his plea, he could have successfully suppressed the recordings, would not have entered the plea agreement, and would have proceeded to trial.

¶20 The District Court denied Andrews's motion, concluding that he had received the benefits of the plea agreement and that even if *Goetz* required suppression of the electronic monitoring, the State still had other evidence it could use to convict. The majority has agreed. This is problematic because the Court has embraced—without providing any reason—the improper standard of review used by the District Court.[3] The question for the District Court is not whether the court believes a Defendant will be convicted anyway, but whether, in light of the *Goetz* decision, a reasonable person in the defendant's position would have pleaded guilty or insisted on going to trial. *State v. Henderson*, 2004 MT 173, ¶ 19, 322 Mont. 69, 74, 93 P.3d 1231, 1235. The Ninth Circuit's language under the "fair and just" standard is analogous. In *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005), the court held that it is sufficient that the reason for withdrawal "could have at least plausibly motivated a reasonable person in

[3] It appears the District Court may have been referencing the factors specific to the "voluntariness" category of "good cause" circumstances warranting withdrawal of a guilty plea, which include case-specific considerations such as the "adequacy of the district court's interrogations, the benefits obtained from a plea bargain, and the withdrawal's timeliness. . . ." *Wise*, 2009 MT at ¶ 16, 203 P.3d at 743. Because these factors are specific to the "voluntariness" analysis, they do not readily translate to the other circumstances we identified "good cause" for withdrawal of a guilty plea.

Garcia's position not to have pled guilty had he known about the evidence prior to pleading."

¶21 Andrews contends that a reasonable person in his position would not have entered the plea agreement in light of our intervening decision in *Goetz*. He avers that the recordings were critical to the dispositive issue of whether Andrews or Bullcalf was the one dealing the drugs to the informant. Andrews argues that his defense at trial would not have been that no sale occurred, but rather that he was not the one making the sale. He contends that even if the informant testified, the absence of any recorded corroboration that it was Andrews who sold the drugs—and the fact that Bullcalf drove to get the drugs and ended the transaction in possession of the informant's buy money—would significantly weaken the State's case against Andrews. Andrews argues that the credibility of the confidential informant, her potential interest in Andrews's conviction, and the fallibility of human memory and perception are also subject to attack before a jury, where as an electronic recording is not.

¶22 Moreover, an *Alford* plea is distinguished from a regular plea by the defendant's weighing of evidence against him. If the recordings had been deemed inadmissible under *Goetz*, the volume and quality of evidence against Andrews would have changed significantly. An *Alford* plea is unlike a simple plea of guilty in which a defendant admits the offense. In entering an *Alford* plea, the defendant does not admit the offense. Rather, the defendant maintains his innocence but looks at all the evidence in the hands of the State and, in light of that evidence, agrees that a jury will probably convict. In essence, the defendant concludes that "although I am not guilty, the weight of the

11

evidence is such that as a practical matter I will be convicted, so I may as well get the benefit of a plea bargain." If qualitatively powerful evidence such as surreptitious recordings had been deemed inadmissible under *Goetz,* a reasonable person's calculation of the probabilities of conviction most certainly would have changed.

¶23    For the above reasons, I dissent and conclude that a reasonable person in Andrews's position would not have entered the *Alford* plea in light of our intervening decision in *Goetz.* I would therefore reverse the District Court's denial of Andrews's motion to withdraw his *Alford* plea and remand for further proceedings.

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter joins in the dissenting Opinion of Justice Leaphart.

/S/ PATRICIA COTTER

Justice James C. Nelson, dissenting.

¶24    I dissent. Regardless of whether a defendant admits his guilt to the charges, enters an *Alford* plea,[1] or is found guilty by a jury, he is entitled to the benefit of any new rule of criminal procedure that is announced before his conviction becomes final.

¶25    It is now beyond dispute that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716 (1987); *accord*

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

12

*State v. Egelhoff*, 272 Mont. 114, 125, 900 P.2d 260, 267 (1995), *rev'd in part on other grounds*, *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013 (1996). "[I]t is the nature of judicial review that precludes us from '[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule.' " *Griffith*, 479 U.S. at 323, 107 S. Ct. at 713 (quoting *Mackey v. United States*, 401 U.S. 667, 679, 91 S. Ct. 1160, 1173 (1971) (Harlan, J., concurring in the judgment)). Thus, "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively" to all defendants whose cases are pending on direct review or not yet final. *Teague v. Lane*, 489 U.S. 288, 300, 109 S. Ct. 1060, 1070 (1989) (plurality opinion); *Griffith*, 479 U.S. at 328, 107 S. Ct. at 716; *Egelhoff*, 272 Mont. at 125-26, 900 P.2d at 267. It follows, therefore, as stated at the outset, that a criminal defendant is entitled to take advantage of any new rule of criminal procedure that is announced before his conviction becomes final.

¶26    Our decision in *State v. Goetz*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489, was announced after Andrews entered his *Alford* plea but before he was sentenced. At that point, Andrews had not been "convicted" of any crime, nor was his case final. *See State v. Bonamarte*, 2006 MT 291, ¶ 6, 334 Mont. 376, 147 P.3d 220 (a "final judgment of conviction" does not exist until the final sentence is imposed); *State v. Tomaskie*, 2007 MT 103, ¶ 12, 337 Mont. 130, 157 P.3d 691 (a defendant is not "convicted" until sentence is imposed). Andrews then promptly moved to take advantage of our decision in *Goetz*. Under these circumstances, we must apply the retroactivity rules set forth in

13

*Griffith*, 497 U.S. at 328, 107 S. Ct. at 716, which we adopted in *Egelhoff*, 272 Mont. at 125, 900 P.2d at 267. Evenhanded justice requires that *Goetz* be applied retroactively to *all* defendants whose cases are pending on direct review or not yet final. *Teague*, 489 U.S. at 300, 109 S. Ct. at 1070; *Griffith*, 479 U.S. at 328, 107 S. Ct. at 716; *Egelhoff*, 272 Mont. at 125-26, 900 P.2d at 267.

¶27  In my view, Andrews demonstrated "good cause" under § 46-16-105(2), MCA, to withdraw his plea. By definition, "good cause" includes the principle that all defendants whose convictions are not yet final are entitled to the benefit of a newly announced rule of criminal procedure. Andrews should be allowed to withdraw his plea and take his chances at a trial where our *Goetz* decision will be imposed. The Court errs in holding to the contrary.

¶28  I dissent.

/S/ JAMES C. NELSON